# EXHIBIT A

21STCV26352

Assigned for all purposes to: Stanley Mosk Courthouse, Judicial Officer: David Sotelo

Electronically FILED by Superior Court of California, County of Los Angeles on 07/16/2021 05:34 PM Sherri R. Carter, Executive Officer/Clerk of Court, by H. Flores-Hernandez, Deputy Clerk

STEPHEN L. RAM, State Bar No. 240769
sram@stradlinglaw.com
LISA M. NORTHRUP, State Bar No. 293784
lnorthrup@stradlinglaw.com
NICOLE L. CARBONEL, State Bar No. 329262
ncarbonel@stradlinglaw.com
STRADLING YOCCA CARLSON & RAUTH
A PROFESSIONAL CORPORATION
660 Newport Center Drive, Suite 1600
Newport Beach, CA 92660-6422
Telephone:  949 725 4000
Facsimile:  949 725 4100

Attorneys for Plaintiffs
CLEANVIEW DISTRIBUTION GROUP LLC,
SMASH HIT TRADING LLC, and GREEN GOLD ICE LLC

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF LOS ANGELES

| | |
|---|---|
| CLEANVIEW DISTRIBUTION GROUP LLC, a Wyoming limited liability company; SMASH HIT TRADING LLC, a Wyoming limited liability company; and GREEN GOLD ICE LLC, a Wyoming limited liability company, <br><br> Plaintiffs, <br><br> vs. <br><br> LGI HOLDINGS, LLC, a Wyoming limited liability company; ALPHABET WHOLESALE, a business organization, form unknown; ALPHABET WHOLESALE, INC., a corporation; ALPHABET WHOLESALE, LLC, a limited liability company; PEYTON PALAIO, an individual; TED PALAIO, an individual; LAWRENCE LARSEN, an individual; MARK JENNINGS, an individual; MARK JENNINGS, individually and as a director of Alphabet Wholesale, Inc.; MARK JENNINGS, individually and as a director of Alphabet Wholesale, business form unknown; MARK JENNINGS, individually and doing business as Alphabet Wholesale; JASON FOSTER, an individual; and DOES 1 through 10, inclusive, <br><br> Defendants. | CASE NO. 21STCV26352 <br><br> **COMPLAINT FOR:** <br><br> **(1) FRAUD IN THE INDUCEMENT;** <br> **(2) TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONSHIP;** <br> **(3) BREACH OF CONTRACT;** <br> **(4) BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING;** <br> **(5) BREACH OF CONTRACT;** <br> **(6) BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING** <br> **(7) UNJUST ENRICHMENT;** <br> **(8) DECLARATORY RELIEF; AND** <br> **(9) DECLARATORY RELIEF** <br><br> **DEMAND FOR JURY TRIAL** |

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

COMPLAINT

4839-3369-3938v3/106261-0003

1    Plaintiffs Cleanview Distribution Group LLC ("Cleanview"), Smash Hit Trading LLC

2  ("Smash Hit"), and Green Gold ICE LLC ("Green Gold") (collectively, "Plaintiffs") hereby

3  bring this Complaint against Defendants LGI Holdings, LLC ("LGI"), Alphabet Wholesale,

4  Alphabet Wholesale, Inc., Alphabet Wholesale, LLC, (collectively the three Alphabet entities

5  are "Alphabet"), [1] Peyton Palaio, Ted Palaio, Lawrence Larsen, Mark Jennings, and Jason

6  Foster and DOES 1 through 10, inclusive (collectively, "Defendants"), and alleges as follows:

7                                    **INTRODUCTION**

8    1.    Cleanview and its affiliated companies built a successful, integrated business to

9  import and distribute kratom (mitragyna speciosa), a plant indigenous to Southeast Asia that

10  may be processed for various uses, including as a fertilizer or in alternative, holistic

11  supplements.  Over the course of several years and the significant investment of resources, the

12  Cleanview companies cultivated extensive relationships directly with a network of farmers in

13  Indonesia to source kratom, and developed a shipping operation and gained the expertise to

14  import and distribute the product for wholesale customers in the United States.

15    2.    Cleanview's success led to an offer to acquire the business from its leading

16  customer LGI and its related company Alphabet in 2021.  Upon information and belief,

17  individual defendants Peyton Palaio, Lawrence Larsen, Ted Palaio, Mark Jennings, and Jason

18  Foster own, operate, and/or control LGI and its affiliate Alphabet as part of larger web of

19  companies, including Olistica Life Sciences Group ("Olistica") and Optimized Plant Mediated

20  Solutions ("OPMS").  Peyton Palaio and others represented to Cleanview and its affiliated

21  companies, Smash Hit and Green Gold (collectively, the "Cleanview Companies") that his

22  network of companies is the largest kratom business in the United States and wanted to expand

23  to integrate the supply, import, and distribution segments into its existing network, and

24  eliminate supply chain disruption.  Peyton Palaio and others courted the Cleanview Companies

25  with an opportunity to sell the business with a handsome profit.

26  _____

27  [1] Upon information and belief, Plaintiffs have named as defendants Alphabet Wholesale,
Alphabet Wholesale, Inc., and Alphabet Wholesale, LLC (collectively "Alphabet") as the form

28  of the business organization is unknown.  All allegations herein alleged against "Alphabet" are
intended to be alleged against each of these three defendants.

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-2-

COMPLAINT

4839-3369-3938v3/106261-0003

1       3.      In March 2021, the parties signed a memorandum of understanding outlining

2   the material terms of the proposed acquisition, valued in excess of $30 million.  The parties

3   also signed a standard non-disclosure agreement to permit LGI and its principals to conduct

4   due diligence on the Cleanview business and review its confidential information for the sole

5   purpose of completing the proposed transaction. Yet, the proposed transaction appears to have

6   been nothing more than a ruse to acquire Cleanview's confidential information, including its

7   know-how and receive introductions to farmers and other critical persons in Cleanview's

8   shipping and import operation, and use that information to compete with Cleanview and then,

9   baldly, demand that Cleanview release additional shipments of kratom and fail to pay

10  outstanding invoices.

11      4.      Cleanview demanded that LGI, Alphabet, and their principals, including Peyton

12  Palaio (aka Peyton Palaia), Ted Palaio (aka Ted Palaia), and others cease and desist all of the

13  improper uses of Cleanview's confidential information that was only provided under the

14  auspices of the NDA with the expectation of LGI timely completing diligence and closing the

15  proposed acquisition as expressly provided in the MOU.  Instead, LGI responded with false

16  and inaccurate assertions that it was only using Cleanview's confidential information for

17  "diligence," that somehow extended to lobbying activities and conspiring with Cleanview's

18  supplier.  LGI's vague assurances that it was "interested" in a resolution were nothing more

19  than pretense because LGI has done nothing for more than a month to advance the proposed

20  transaction or even an interim agreement that LGI itself proposed.

21      5.      The Cleanview companies responded to LGI and Alphabet's assertions and now

22  seek this Court's intervention to hold LGI, Alphabet, Peyton Palaio, Ted Palaio, and their

23  myriad web of shell companies responsible for scheme to acquire Cleanview's confidential

24  information and compete with Cleanview, and all the other aspects of their deliberate fraud.

25                                  **PARTIES**

26      6.      Plaintiff Cleanview is a limited liability company in the state of Wyoming with

27  its principal place of business in Los Angeles, California.

28

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-3-

COMPLAINT

4839-3369-3938v3/106261-0003

1    7.    Plaintiff Smash Hit is a limited liability company in the state of Wyoming with

2  its principal place of business in Los Angeles, California.

3    8.    Plaintiff Green Gold is a limited liability company in the state of Wyoming with

4  its principal place of business in Los Angeles, California.

5    9.    On information and belief, Defendant LGI is a limited liability company in the

6  state of Wyoming.

7    10.    On information and belief, Defendant Alphabet Wholesale is a business entity

8  of unknown form.

9    11.    On information and belief, Defendant Alphabet Wholesale, Inc. is a corporation.

10    12.    On information and belief, Defendant Alphabet Wholesale, LLC is a limited

11  liability company.

12    13.    On information and belief, Defendant Peyton Palaio also known as Peyton

13  Palaia is an individual.

14    14.    On information and belief, Defendant Lawrence Larsen also known as

15  Lawrence Palaio and Lawrence Palaia is an individual.

16    15.    On information and belief, Defendant Ted Palaio also known as Ted Palaia is an

17  individual.

18    16.    On information and belief, Mark Jennings is an individual.

19    17.    On information and belief, Mark Jennings is a director of Alphabet Wholesale,

20  Inc.

21    18.    On information and belief, Mark Jennings is a director of Alphabet Wholesale,

22  business form unknown.

23    19.    On information and belief, Mark Jennings does business as Alphabet

24  Wholesale.

25    20.    On information and belief, Jason Foster is an individual.

26    21.    Plaintiffs do not know the true names and capacities of the Defendants sued in

27  this action by the fictitious names DOES 1 through 10, inclusive.  Such fictitious Defendants

28  are sued pursuant to the provisions of the California Code of Civil Procedure.  Upon

-4-

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

COMPLAINT

4839-3369-3938v3/106261-0003

1   information and belief, Plaintiffs allege that each of the fictitiously named Defendants was in

2   some manner responsible for, participated in or contributed to the matters and things of which

3   Plaintiffs complain herein, and in some fashion, has legal responsibility therefor.  When the

4   exact nature and identity of the fictitious Defendants who are responsible for participating and

5   contributing to the matters and things herein alleged are ascertained by Plaintiffs, Plaintiffs will

6   amend this pleading to set forth the same.

7       22.     Upon information and belief, Plaintiffs allege that each Defendant, including

8   DOES 1-10, was and is the agent, employee, servant, subsidiary, partner, member, associate, or

9   representative of each other Defendant, including DOES 1-10, and all of the acts and omissions

10  alleged to have been done by the Defendants were done in the course and scope of the agency,

11  employment, service, subsidiary relationship, partnership, membership, association, or

12  representative relationship and with knowledge and consent of their respective principals,

13  employers, masters, parent corporations, partners, members, associates, or representatives.

14                              **JURISDICTION AND VENUE**

15      23.     Jurisdiction is proper in the Superior Court for the County of Los Angeles

16  pursuant to Section 410.10 of the California Code of Civil Procedure because it has general

17  subject matter and no statutory exceptions to jurisdiction exist.

18      24.     Venue is proper in this Court as the County of Los Angeles is where the subject

19  contracts were made and to be performed, where the parties' obligations occurred, and the

20  breaches asserted herein occurred.  Venue is also proper because the injury has occurred by

21  Defendants' wrongful conduct.

22                              **GENERAL ALLEGATIONS**

23      **A.      The Cleanview Companies Develop An Import And Distribution Business**

24      25.     The Cleanview Companies have developed an extensive, integrated business for

25  the importation and distribution of wholesale kratom, a tropical evergreen tree that has been

26  traditionally used in Southeast Asia for herbal and medicinal purposes.  Originally, the

27  Cleanview Companies solely purchased kratom through an intermediate supplier and arranged

28  shipping and importation, encountering challenges of a new business.

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-5-

COMPLAINT

4839-3369-3938v3/106261-0003

1     26.    Over time, the Cleanview Companies spend significant time and resources to

2   cultivate relationships with farmers in Indonesia, and form a network to source much greater

3   amounts of kratom of consistent quality.  In turn, the Cleanview Companies worked with

4   suppliers and others to create a reliable shipping operation to transport the product from

5   Indonesia into the United States, principally through the ports of Los Angeles and Long Beach,

6   and facilitate delivery to wholesale customers from the Cleanview Companies' warehouses in

7   Los Angeles County.

8     27.    As the Cleanview Companies grew in their expertise, the Cleanview Companies

9   became one of the largest importers of kratom in the United States.  Upon information and

10   belief, competitors attempt to import kratom under a variety of government codes, but

11   routinely have product held or even seized at Customs.  In contrast, the Cleanview Companies

12   expressly label the product as kratom (mitragyna speciose).

13         **B.**      **The Cleanview Companies Begin Supplying Kratom To Alphabet And LGI**

14                   **And Enter Into An Exclusive Supply Agreement**

15     28.    By 2020, Alphabet, primarily through Lawrence Larsen, approached the

16   Cleanview Companies to supply its operations with kratom.  Over the course of several

17   months, the Cleanview Companies fulfilled a number of Alphabet orders.  Larsen explained

18   that Alphabet was part of a larger organization that includes product lines under the brands

19   Olistica and OPMS. Larsen stated that these operations were the largest kratom businesses in

20   the United States, grossing millions annually.

21     29.    The Cleanview Companies' shipments and deliveries to Alphabet were

22   designated for agricultural uses, as the Cleanview Companies had no control over Larsen and

23   Alphabet's processing of the product and ultimate use.  Larsen and Alphabet never raised any

24   objection to the designation.  Larsen and Alphabet never suggested any testing or other

25   requirements before accepting delivery of product.  In fact, Larsen and Alphabet never set any

26   specification for the product, other than the quantities.

27     30.    Satisfied with the Cleanview Companies' performance to satisfy larger orders,

28   Larsen and others with Alphabet sought to receive a consistent supply of kratom to meet their

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

4839-3369-3938v3/106261-0003

1  commercial needs.  On or about October 26, 2020, Alphabet, and Smash Hit and Green Gold

2  entered into an Exclusive Supply Agreement (the "Supply Agreement"), by which Smash Hit

3  and Green Gold became Alphabet's exclusive supplier of kratom in exchange for Alphabet

4  agreeing to pay set prices ranging from $12.25 to $13.50 per Kg, depending on the quantity

5  purchased.  A true and correct copy of the Supply Agreement is attached hereto as Exhibit 1

6  and incorporated by reference herein.

7       31.    The Supply Agreement required Smash Hit and Green Gold to maintain an

8  inventory of 800 metric tons available to meet Alphabet's needs.  Smash Hit and Green Gold,

9  in turn, maintained that inventory in its warehouse facilities in Los Angeles County (and more

10 recently expanded those warehouse facilities to meet Alphabet and LGI's supply demands as

11 detailed below).

12      32.    The Supply Agreement required Alphabet's purchase of a minimum amount of

13 kratom on a monthly basis, increasing from 275 metric tons to 300 metric tons.  This provision

14 was a critical commitment for Smash Hit and Green Gold to become an exclusive supplier,

15 representing over $3 million in monthly revenues.

16      33.    The Supply Agreement provided Alphabet to obtain replacement for any kratom

17 that did not meet "testing and specifications."  As part of the replacement process, the Supply

18 Agreement required that Alphabet give written notice within 60 days of receipt of the shipment

19 and to return any rejected product.  This provision was a safeguard for Smash Hit and Green

20 Gold against claims of defective product and then re-sale of the same without providing Smash

21 Hit and Green Gold an independent opportunity to test the product and take remedial action.

22 Because Smash Hit and Green Gold only intended to supply product under the agricultural

23 designation, just as the Cleanview Companies had before the Supply Agreement, there is a

24 limited universe of testing or defects that are possible, such as whether other agricultural

25 product became intermixed with the kratom, such as bird feathers.  In fact, Larsen informed the

26 Cleanview Companies that following receipt of product, Alphabet sanitizes any entire

27 shipment before it begins to process the product.  Larsen even explained that because Alphabet

28

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-7-
COMPLAINT
4839-3369-3938v3/106261-0003

1    incorporates product into customer goods under Olistica and OPMS, the sanitization is a
2    necessary process.

3        34.    The Supply Agreement set an 18-month, renewable term, under which Smash
4    Hit and Green Gold became an exclusive supplier.

5        35.    Smash Hit and Green Gold performed under the Supply Agreement, meeting
6    each order from Alphabet under the terms of the agreement.  Alphabet never informed Smash
7    Hit or Green Gold of any specific testing or specifications for any delivery, and never objected
8    to the agricultural designation of the product.  Indeed, Larsen once explained that Alphabet
9    ceased using another kratom importer because it added artificial coloring to the product.  He
10   also emphasized the robust sanitization process Alphabet followed.

11       **C.    Alphabet Pursues An Outright Acquisition Of The Cleanview Companies**

12       36.    Satisfied with Smash Hit and Green Gold's product and performance under the
13   Supply Agreement, Alphabet began to engage in discussions to acquire Cleanview Parties'
14   import business by early 2021.  As part of the acquisition, LGI would also acquire from
15   Cleanview certain real estate and warehouse facilities under construction in Indonesia.

16       37.    Larsen introduced the Cleanview Companies to Peyton Palaio, as the head of
17   the Alphabet network of companies.  Larsen and Peyton Palaio began negotiating the terms for
18   a deal.

19       38.    In the meantime, Alphabet sent a notice on or about January 26, 2021,
20   purporting to assert that product previously received was defective and provided various
21   testing results.  The Cleanview Companies were surprised by the notice for multiple reasons,
22   including that no testing or specifications had ever been agreed upon, the testing results
23   suggested testing compatible with human consumption, and that the results were from before
24   the product underwent sanitization as part of Alphabet's normal operations.  Larsen and later
25   Peyton Palaio immediately downplayed the notice; Alphabet did not return the supposedly
26   defective product as required under the Supply Agreement and Alphabet did not request
27   replacement product.

28

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-8-
COMPLAINT

4839-3369-3938v3/106261-0003

1    39.    After a series of discussions between and among Peyton Palaio and Larsen, and

2  the Cleanview Companies principal, John Thomas Bryant, at his offices in Los Angeles

3  County, on or about March 10, 2021, Cleanview and LGI entered in a Memorandum of

4  Understanding (the "MOU"), which outlined the basic terms for the acquisition of the

5  Cleanview Companies.

6    40.    The MOU also incorporated as Exhibit A, a Confidentiality and Non-Disclosure

7  Agreement (the "NDA").   The MOU is expressly designated as confidential and limits the

8  ability to disclose its terms (and ostensibly the NDA).   True and correct copies of the MOU

9  and NDA are attached as Exhibit 2 and incorporated herein by reference.   Concurrently,

10  Plaintiffs have moved to seal that exhibit consistent with the MOU's terms.

11    **D.    As LGI Conducts Diligence, The Parties Negotiate A Definitive Agreement**

12    41.    After entering into the MOU and NDA, the Cleanview Companies responded to

13  standard diligence requests about its operations under the auspices of the NDA.   The

14  Cleanview Parties showed the LGI the dynamics of its entire supply and distribution chain,

15  from the farmers and distributors in Indonesia, to the importation process.   The Cleanview

16  Parties also introduced the LGI Parties to its main supplier, Indobotanical Trading Company

17  ("Indobotanical").

18    42.    As part of the diligence, Peyton Palaio requested that Ted Palaio visit contacts,

19  suppliers, farmers, and others in Indonesia.   The Cleanview Companies welcomed Ted Palaio,

20  including arranging sponsorship for his visit, a guide, and accommodations for him and his

21  wife through Indobotanical.

22    43.    During this time, the Cleanview Companies began to directly negotiate terms of

23  a definitive acquisition agreement, largely with Peyton Palaio.   From March through May

24  2021, Peyton Palaio had numerous conversations, e-mails and texts with Mr. Bryant to both

25  negotiate open terms and learn about the Cleanview operations.   The parties exchanged drafts

26  of a definitive agreement, including a draft from Cleanview on or about May 13, 2021.

27    44.    During this time, LGI continued to place kratom orders from the Cleanview

28  Companies.   However, unlike before, the Cleanview Companies enabled LGI to place those

-9-

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

COMPLAINT

4839-3369-3938v3/106261-0003

1  orders with its supplier Indobotanical and pay for those invoices at cost.  The Cleanview

2  Companies were willing to wait for payment for its portion of the fees until the acquisition was

3  complete.

4        45.     Yet, despite the Cleanview Companies' openness and candor during diligence

5  and availability to answer Peyton Palaio, Larsen, and Ted Palaio's questions, Peyton Palaio

6  explained to Mr. Bryant that diligence and finalizing the acquisition agreement from LGI's

7  side was taking longer to complete.  By the end of May 2021, Peyton Palaio proposed a

8  reimbursement agreement to ostensibly limit out-of-pocket costs for the Cleanview Companies

9  while the acquisition agreement was completed, but would not directly compensate the

10  Cleanview Companies for their work and efforts for continuing to supply kratom to LGI and

11  Alphabet.

12        46.     On or about June 2 2021, the Cleanview Companies supplied the last of the

13  requested diligence items.  And, on or about June 3, 2021, the Cleanview Companies sent a

14  revised draft of the reimbursement agreement to ensure the Cleanview Companies were

15  compensated for their efforts in supplying kratom to LGI and Alphabet, and for payment of a

16  growing number of outstanding payments.

17       **E.**     **The Cleanview Companies Learn Of Improper Use Of Their Confidential**

18             **Information And Demand LGI Cease And Desist**

19        47.     The Cleanview Companies received no substantive response following the

20  delivery the last diligence item and updated draft reimbursement agreement.  In the meantime,

21  the Cleanview Companies had been informed that Ted Palaio was still in Indonesia, but is

22  exceeding any necessary diligence.

23        48.     Upon information and belief, the Cleanview Companies are informed that Ted

24  Palaio and others directly contacted farmers in the Cleanview Companies supply chain—

25  farmers were only were identified pursuant to the NDA—and began requesting that farmers

26  undertake various changes to their practices.

27        49.     Upon information and belief, the Cleanview Parties are informed that Ted

28  Palaio and the other LGI executives have been actively engaged with local Indonesian

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-10-

COMPLAINT

4839-3369-3938v3/106261-0003

1    individuals and entities that are part of Cleanview's supply chain, including Indobotanical.

2    The Cleanview Parties are further informed that Ted Palaio on behalf of LGI has been meeting

3    with and potentially lobbying Indonesian government officials through the contact that the

4    Cleanview Parties carefully cultivated and only introduced him to under the protection of the

5    NDA.

6        50.    Prior to introducing LGI to Indobotanical, the Cleanview Companies had a

7    fostered a productive business relationship with Indobotanical. Yet, after Indobotanical began

8    working with the LGI Parties, LGI failed to pay several of Indobotanical's invoices. As a

9    result, many of Cleanview's shipments (destined for ultimate delivery to LGI) were delayed

10   and put on hold until LGI or Cleanview remitted payment. For the first time in the relationship

11   between Indobotancial and the Cleanview Parties, Indobotancial threatened to engage in self-

12   help if payment was not rendered.

13       51.    Mr. Bryant discussed the issue directly with Indobotanical.   When Mr. Bryant

14   highlighted that Indobotanical invoices were directed to LGI since the date of the MOU and

15   that Ted Palaio was staying as Indobotanical's guest, Indobotanical still blamed the Cleanview

16   Companies, even though all Indobotanical had to do was ask Ted Palaio to render payment.

17       52.    After receiving no response from LGI, on June 10, 2021, the Cleanview

18   Companies demanded that LGI cease and desist any use of information or materials in breach

19   of the terms of the NDA, and that LGI immediately pay the outstanding invoices.

20       53.    By letters dated June 28, 2021 and June 29, 2021, LGI and Alphabet responded

21   to the Cleanview Companies efforts to have LGI comply with the MOU.  In one letter, LGI did

22   not dispute its use of the confidential information, but claimed, for example, that lobbying a

23   foreign government somehow qualified as diligence.  In another letter, Alphabet and LGI

24   reasserted the mistaken assertions of defective product, when the parties never agreed to any

25   testing regime, neither Alphabet nor LGI returned the supposedly defective product, and the

26   MOU actually resolved the issue.  The Cleanview Companies responded by letters dated July

27   14, 2021.

28

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-11-

4839-3369-3938v3/106261-0003

54. As of the date of this Complaint, LGI, Alphabet, and their principals have not signed the updated reimbursement agreement or provided any comments, or remitted any outstanding payments. In short, LGI, Alphabet, and their principals have not made any meaningful attempt to honor the MOU, NDA or the reimbursement agreement that they originally proposed.

55. Despite the Cleanview Parties' continuous efforts to finalize the definitive agreement, LGI Parties have demonstrated no intention of completing the transaction.

56. Indeed, notwithstanding the fact that Peyton Palaio repeatedly assured the Cleanview Companies that LGI was working diligently to finalize the parties' agreement, LGI has essentially ceased all of its negotiations with the Cleanview Parties after the Cleanview Parties sent the LGI the last draft of the definitive purchase agreement on or about May 19, 2021. Nor have LGI, Alphabet and their principals, responded to the last diligence material submitted on June 2, 2021.

57. The Cleanview Companies are informed and believe that the LGI, Alphabet and their principals are intentionally misusing the Cleanview Companies' confidential information and interfering with its preexisting business relationships in an attempt to cut the Cleanview Companies out of the deal and start their own kratom import and distribution business using the information and contacts that the Cleanview Companies provided pursuant to the NDA.

## FIRST CAUSE OF ACTION

### (Fraud In The Inducement)

**(Cleanview Against All Defendants Including LGI Holdings, LLC, Alphabet, Peyton Palaio, Ted Palaio, Lawrence Larsen, Mark Jennings, Jason Foster, and DOES 1 through 10, inclusive)**

58. Plaintiffs expressly incorporate paragraphs 1 through 57 above as though fully set forth herein.

59. Defendants made numerous false or misleading statements with the intent to induce Clearview to enter into the MOU and NDA. For example, in multiple telephone conversations, Zoom conferences, and other communications from January through May 2021,

-12-

STRADLING YOCCA
CARLSON & RAUTH
L A W Y E R S
NEWPORT BEACH

4839-3369-3938v3/106261-0003

1   Peyton Palaio, Lawrence Larsen, Mark Jennings, and others stated to Mr. Bryant that LGI and

2   Alphabet, wanted to purchase Cleanview and its affiliate companies, Smash Hit and Green

3   Gold, to acquire its business and agreed to honor the MOU and NDA.

4       60.     Specifically, Peyton Palaio persuaded the Cleanview Parties to provide the LGI

5   with discounted shipments of kratom and told Mr. Bryant that LGI's payments under the

6   definitive agreement would compensate Cleanview for a short interval of discounted pricing.

7       61.     These statements were false and misleading at the time they were made because,

8   upon information and belief, Defendants LGI, Alphabet, Peyton Palaio, Ted Palaio, Lawrence

9   Larsen, Mark Jennings, and Jason Foster, never had any intention of honoring the promises and

10  covenants in the MOU and NDA, but instead Defendants LGI, Alphabet, Peyton Palaio, Ted

11  Palaio, Lawrence Larsen, Mark Jennings, and Jason Foster, intended to use the MOU and NDA

12  to gain Cleanview's confidential information and start a competing business, and obtain

13  discounted shipments while it established that business.

14      62.     These misrepresentations pertained to material facts.  Cleanview's primary

15  purpose in entering into the MOU and NDA was to timely negotiate and complete a definitive

16  purchase agreement for the acquisition of the Cleanview business.  For example, the provisions

17  in the NDA were material to ensure limited use of Cleanview's confidential information and

18  prevent any third party from gaining a competitive advantage.  As another example, Cleanview

19  only agreed to discounted shipping in the MOU based upon the short, contractual time period

20  in that agreement and reciprocal promises for the definitive agreement.

21      63.     Cleanview reasonably relied on the representations as true.  Based on these

22  representations and those in the MOU and NDA, Cleanview entered into the MOU and NDA.

23  Soon after, Cleanview began providing LGI with requested diligence information containing

24  Cleanview's confidential information, as defined in the NDA, including making introductions

25  to critical persons and entities in Cleanview's operation that had been cultivated and used as

26  part of their business.  Cleanview also facilitated the shipping to LGI of large quantities of

27  kratom under the discounted pricing in the MOU.

28

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-13-

COMPLAINT

4839-3369-3938v3/106261-0003

64.    Cleanview has been damaged by the use and disclosure of its confidential information and the failure to follow through with finalizing a purchase agreement of the Cleanview Parties' business.

65.    Plaintiffs are entitled to rescind the MOU and NDA, and seek to rescind the MOU and NDA and/or rescissionary damages.

66.    In the alternative, Cleanview is entitled to damages in an amount to be proven at trial.

67.    Upon information and belief, the above-describes acts and conduct of the Defendants LGI, Alphabet, Peyton Palaio, Ted Palaio, Lawrence Larsen, Mark Jennings, and Jason Foster, was willful, malicious and oppressive and undertaken with the intent to cause injury and damage to Cleanview, thereby justifying an award of exemplary and punitive damages.

## SECOND CAUSE OF ACTION

### (Tortious Interference With Contractual Relationship)

### (Cleanview Against All Defendants)

68.    Plaintiffs expressly incorporate paragraphs 1 through 67 above as though fully set forth herein.

69.    Cleanview, Smash Hit, and Green Gold have developed contacts and contractual relationship with kratom farmers, distributors, and suppliers in Indonesia, including Indobotanical.

70.    Pursuant to the NDA, Cleanview introduced Defendants LGI, Alphabet, Peyton Palaio, Ted Palaio, Lawrence Larsen, Mark Jennings, and Jason Foster, to these critical persons and entities.

71.    Defendants LGI, Alphabet, Peyton Palaio, Ted Palaio, Lawrence Larsen, Mark Jennings, and Jason Foster, have full knowledge of Cleanview, Smash Hit, and Green Gold's contractual relationships with these persons and entities because Cleanview, Smash Hit, and Green Gold are part of their supply chain that has been supplying LGI and Alphabet with kratom for more than one year.

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-14-

COMPLAINT

4839-3369-3938v3/106261-0003

1      72.     Defendants LGI, Alphabet, Peyton Palaio, Ted Palaio, Lawrence Larsen, Mark

2   Jennings, and Jason Foster without any legal right or privilege to do so, intentionally interfered

3   with Cleanview, Smash Hit, and Green Gold's contractual relationships with the intent to

4   induce breach and cause disruption by, but not limited to the following acts, misconduct or

5   omissions:

6              (i)     Failing to pay Indobotanical and other vendors' invoices, causing those

7   entities to withhold shipments or services;

8              (ii)    Misusing Cleanview's confidential information in order to disrupt the

9   Cleanview Companies' supply chain and preexisting business relationships; and

10             (iii)   Conspiring to enter into their own agreements with the individuals and

11  entities that are part of Cleanview, Smash Hit, and Green Gold's supply chain.

12     73.     Defendants LGI, Alphabet, Peyton Palaio, Ted Palaio, Lawrence Larsen, Mark

13  Jennings, and Jason Foster actions interfered with the Cleanview, Smash Hit, and Green Gold's

14  contractual rights and benefits.

15     74.     As a result thereof, Cleanview, Smash Hit, and Green Gold's have suffered

16  damages in an amount to be proven at trial.

17     75.     Upon information and belief, the above-describes acts and conduct of the

18  Defendants LGI, Alphabet, Peyton Palaio, Ted Palaio, Lawrence Larsen, Mark Jennings, and

19  Jason Foster was willful, malicious and oppressive and undertaken with the intent to cause

20  injury and damage to Cleanview, thereby justifying an award of exemplary and punitive

21  damages

22                              **THIRD CAUSE OF ACTION**

23                            **(Breach of the MOU and NDA)**

24                         **(Cleanview Against LGI and DOES 1-10)**

25     76.     Plaintiffs expressly incorporate paragraphs 1 through 75 above as though fully

26  set forth herein.

27

28

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-15-

COMPLAINT

4839-3369-3938v3/106261-0003

1    77.    Cleanview entered into the written MOU and NDA with LGI on or about March

2    10, 2021.  True and correct copies of the MOU and NDA are attached as **Exhibit 2** and

3    concurrently, Plaintiffs have moved to seal that exhibit consistent with the MOU's terms.

4    78.    Under the NDA, LGI may use Cleanview's confidential information for limited

5    purposes.

6    79.    Defendants have breached the MOU and NDA, by among other actions:

7    (i)    Actively engaging and cultivating relationships with local Indonesian

8    individuals and entities that are part of the Cleanview's supply chain, including Indobotanical,

9    that Cleanview introduced to Defendants under the protection of the NDA;

10    (ii)    Engaging in lobbying Indonesian government officials through the

11    contact that Cleanview introduced to the LGI Parties under the protection of the NDA; and

12    (iii)    Failing to pay outstanding invoices due to Indobotanical and other

13    vendors, as required by the MOU.

14    80.    Cleanview has substantially performed all of its obligations owed to LGI under

15    the MOU and NDA, except for those that it is excused from performing.

16    81.    These breaches of the Agreement have caused Cleanview to suffer substantial

17    damages in an amount to be proven at trial, plus interest, costs and attorneys' fees pursuant to

18    section 6.1 of the NDA attached as Exhibit A to the MOU.

19                        **FOURTH CAUSE OF ACTION**

20              **(Breach of the Implied Covenant of Good Faith and Fair Dealing)**

21                      **(Cleanview Against LGI and DOES 1-10)**

22    82.    Plaintiffs expressly incorporate paragraphs 1 through 81 above as though fully

23    set forth herein.

24    83.    Cleanview entered into the written MOU and NDA with LGI on or about March

25    10, 2021.

26    84.    Implied by those agreements is a covenant of good faith and fair dealing.  The

27    implied covenant requires that neither party act in a manner that would injure the rights of the

28

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-16-

COMPLAINT

4839-3369-3938v3/106261-0003

1 | other party to receive the benefit of the agreement.  It requires the parties to act cooperatively

2 | in accordance with their agreed common purpose.

3 |      85.     LGI by its actions and by engaging in the wrongdoing described herein,

4 | breached the implied covenant by, among other things: failing to act fairly, honestly, and

5 | cooperatively with Cleanview and seeking to deprive Cleanview of the benefits of the MOU

6 | and NDA.

7 |      86.     Cleanview has substantially performed all of its obligations owed to the LGI

8 | under the MOU and NDA, except for those that it is excused from performing.

9 |      87.     As a direct and proximate result of the LGI's conduct, Cleanview has suffered

10 | damages in amount to be proven at trial.

## FIFTH CAUSE OF ACTION

### (Breach of the Supply Agreement)

### (Smash Hit and Green Gold Against Alphabet and DOES 1-10)

14 |      88.     Plaintiffs expressly incorporate paragraphs 1 through 87 above as though fully

15 | set forth herein.

16 |      89.     Smash Hit and Green Gold entered into the written Supply Agreement with

17 | Alphabet on or about October 26, 2020.  A true and correct copy of the Supply Agreement is

18 | attached as **Exhibit 1**.

19 |      90.     Under the Supply Agreement, Alphabet is required to exclusively purchase

20 | kratom in the United States from Smash Hit and Green Gold until the expiration of the

21 | agreement's term.  Alphabet is further required to make a minimum purchase of 300 metric

22 | tons per month starting on January 26, 2021.

23 |      91.     Defendants have breached the Agreement, by among other actions:

24 |      (i)     Using other suppliers for Alphabet's use in the United States;

25 |      (ii)     Failing to purchase the minimum requirements set forth in the Supply

26 | Agreement; and

27 |      (iii)     Failing to pay outstanding invoices.

28

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-17-

COMPLAINT

4839-3369-3938v3/106261-0003

1    92.    Smash Hit and Green Gold have substantially performed all of their obligations

2  owed to Alphabet under the Supply Agreement, except for those that they are excused from

3  performing.

4    93.    These breaches of the Supply Agreement have caused Smash Hit and Green

5  Gold to suffer substantial damages in an amount to be proven at trial.

6                              **SIXTH CAUSE OF ACTION**

7            **(Breach of the Implied Covenant of Good Faith and Fair Dealing)**

8              **(Smash Hit and Green Gold Against Alphabet and DOES 1-10)**

9    94.    Plaintiffs expressly incorporate paragraphs 1 through 93 above as though fully

10  set forth herein.

11    95.    Smash Hit and Green Gold entered into the written Supply Agreement with

12  Alphabet on or about October 26, 2020.  A true and correct copy of the Supply Agreement is

13  attached as **Exhibit 1**.

14    96.    The implied covenant requires that neither party act in a manner that would

15  injure the rights of the other party to receive the benefit of the agreement.  It requires the

16  parties to act cooperatively in accordance with their agreed common purpose.

17    97.    Alphabet by its actions and by engaging in the wrongdoing described herein,

18  breached the implied covenant by failing to cooperate and, among other things: delivering

19  improper notices of defect, when, among other things, the parties never agreed upon any

20  testing or specifications, using improper testing, and failing to permit Smash Hit and Green

21  Gold's own inspection of the purportedly defective product.

22    98.    Smash Hit and Green Gold have substantially performed all of their obligations

23  owed to the Alphabet under the Supply Agreement, except for those that they are excused from

24  performing.

25    99.    As a direct and proximate result of the Alphabet's conduct, Smash Hit and

26  Green Gold have suffered damages in amount to be proven at trial.

27

28

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-18-

COMPLAINT

4839-3369-3938v3/106261-0003

1

2

3

**SEVENTH CAUSE OF ACTION**

**(Unjust Enrichment)**

**(Cleanview Against All Defendants)**

4        100.    Plaintiffs expressly incorporate paragraphs 1 through 99 above as though fully

5  set forth herein.

6        101.    Defendants have benefitted from: i) utilizing Cleanview's confidential

7  information obtained under the NDA; ii) discount rates as set forth in the MOU based only

8  upon the contemplated short, contractual period to finalize a deal; and iii) receiving shipments

9  of kratom from Cleanview and failing to pay the invoices.

10        102.    Defendants have not paid Cleanview for the benefits it has received from

11  Cleanview.

12        103.    As a direct and proximate result of Defendants' wrongful conduct, Defendants

13  have been unjustly enriched to the detriment of Cleanview.

14        104.    It would be unjust, unfair, and inequitable to permit Defendants to retain these

15  benefits.

16        105.    Cleanview demands restitution in an amount to be determined at trial.

17

18

19

**EIGHTH CAUSE OF ACTION**

**(Declaratory Relief)**

**(Smash Hit and Green Gold Against Alphabet and DOES 1-10)**

20        106.    Plaintiffs expressly incorporate paragraphs 1 through 105 above as though fully

21  set forth herein.

22        107.    There is a present and actual controversy regarding whether Smash Hit and

23  Green Gold breached the Supply Agreement.

24        108.    Smash Hit and Green Gold seek a declaratory judgment pursuant to California

25  Code of Civil Procedure Section 1060 that Smash Hit and Green Gold have not breached the

26  Supply Agreement.

27

28

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-19-

COMPLAINT

4839-3369-3938v3/106261-0003

1

**NINTH CAUSE OF ACTION**

2

**(Declaratory Relief)**

3

**(Cleanview Against LGI and DOES 1-10)**

4        109.    Plaintiffs expressly incorporate paragraphs 1 through 108 above as though fully

5     set forth herein.

6        110.    There is a present and actual controversy regarding whether Cleanview has

7     breached the MOU.

8        111.    Cleanview seeks a declaratory judgment pursuant to California Code of Civil

9     Procedure Section 1060 that Cleanview has not breached the MOU.

10                                **PRAYER FOR RELIEF**

11        WHEREFORE, Plaintiffs pray for judgment and relief against the Defendants as

12     follows:

13        **A.**    For general damages of at least $10 million ($10,000,000) according to proof;

14        **B.**    For special damages according to proof;

15        **C.**    For rescission of the Agreement;

16        **D.**    For rescissionary damages according to proof;

17        **E.**    For punitive and exemplary damages as permitted by law;

18        **F.**    For restitution according to proof;

19        **G.**    A preliminary and permanent injunction restraining Defendants from, among

20                  other acts, taking any actions based on or making any further use of

21                  Cleanview's confidential information;

22        **H.**    For pre-judgment and post-judgment interest as provided by law;

23        **I.**    For costs;

24        **J.**    For reasonable attorneys' fees as provided in section 6.1 of the NDA; and

25        **K.**    For such further or other relief as the Court deems just and proper.

26

27

28

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-20-

COMPLAINT

4839-3369-3938v3/106261-0003

1

**JURY DEMAND**

2          Plaintiffs hereby demand a trial by jury on all issues.

3

4    DATED:  July 16, 2021               STRADLING YOCCA CARLSON & RAUTH
                                         A Professional Corporation

5

6                                        By: _____
                                             Stephen L. Ram
7                                            Lisa M. Northrup
                                             Nicole Carbonel
8                                        Attorneys for Cleanview Distribution Group LLC,
                                         Smash Hit Trading LLC, and Green Gold ICE LLC
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-21-

COMPLAINT

4839-3369-3938v3/106261-0003

# EXHIBIT 1

### EXCLUSIVE SUPPLY AGREEMENT

This Exclusive Supply Agreement ("Agreement") by and between the <u>DBA Alphabet Wholesale</u> ("Alphabet Wholesale"), and <u>Smash Hit Trading LLC, Green Gold ICE LLC, any of their partners, affiliates, owners or subsidiaries</u> ("Partner") is being entered into this 26 day of oct 2020 (the "Effective Date").

WHEREAS, Alphabet Wholesale wishes to engage with Partner to secure certain supply arrangements. Specifically, Alphabet Wholesale wishes to afford Partner an opportunity to serve as its supplier relating to the supply of kratom (mitragyna speciosa) in a relationship where by the seller will maintain an exclusive relationship to the buyer and not solicit or sell kratom ( Mitragyna Speciosa ) to other buyers.

WHEREAS, the Partner wishes to Supply Alphabet Wholesale with material relating to kratom (mitragynia specisoa). Partner will maintain a certain inventory in order to meet increasing demand, and agrees to continue to increase stock of inventory at Alphabet Wholesale's discretion, at anytime, in order to meet demand, without increasing the agreed upon price set here within.

NOW, THERFORE, in consideration of the mutual covenants and agreements set forth herein and for good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, the parties hereby agree as follows:

1.   RESPONSIBILITIES.

(a)   Of the Partner:

   (i)   maintain an inventory of 800 metric tons of kratom materials (mitragyna speciosa) at all times.  This inventory must be immediately accessible and safely secured and stored in the U.S. If inventory requirements are not met, Partner will bear all costs associated with shipping the requested product via air freight, without changing the price/Kg agreed upon.
   (ii)   have inventory on hand distributed between different colors, to be determined by Alphabet Wholesale  and can be changed at any time.
   (iii)   fully disclose any and all circumstances that currently exist or that could arise during the Term (as defined herein) that could be (or cause) a conflict of interest between the respective interests of Alphabet Wholesale and the Partner; and,

Initials _____ , _____

1

(iv)   provide full access to the physical facilities for Companion Ag Program(training, oversight, auditing, and access to facility security/ surveillance systems and records and ability to inform Partner on changes or exclusion of certain farmers or producer or sellers of kratom).

(v)   provide inventory of incoming material at sea on a monthly basis or upon requested

(vi)   immediately replace any material supplied that does not pass incoming material testing and specifications.  This replacement must include an additional 25% over the given amount returned of additional kratom to be sent out within 24 hours of receiving notice of rejection.  Rejected material must be returned to Partner at the Partner's expense.  Partner will bear all costs associated with replacement of rejected material.

(vii)   apply a coding system to all incoming shipments that will give traceability back to the farmer that shipped the material.

(viii)   exclusively supply Alphabet Wholesale with kratom materials (mitragynina speciosa) no matter how or where it was sourced from. Partner may not sell or fulfill any other vendors orders or requests for kratom or related materials or goods in this category. Partner will terminate effective immediately upon execution of this agreement the pre-existing relationships and future opportunities for the sale of kratom and related goods .

(ix)   allow for direct communication with farmers to help implement GAP procedures and  at their farms. Partner agrees to terminate relationship with any farms that ___ _____ deem to be an unfit source of raw materials.

(x)   share any and all previous/ current client information in order to help expand operations. This should include contact name, #, email, quantities purchased, pricing, and frequency of purchases and assist in facilitating the sale of Kratom and related goods to those parties where requested by Alphabet Wholesale

(b)   Of Alphabet Wholesale shall:

(i)   purchase a minimum of 275 metric tons per month for the 1st 3 months after signing of this contract. After 3 months, the minimum amount purchased monthly by Alphabet Wholesale will increase to 300+ metric tons per month.

(ii)   ensure that incoming shipments are tested within 60 days of receipt and that any rejections of shipments are reported to Partner within that time frame.

2                              Initials  *Mj*  ,  ⟨B⟩

(iii)   provide feedback on materials from specific farms and help to choose premiere farms to help avoid any contaminated material or not-to-spec shipments. Through the Companion Ag Program shall be responsible for the oversight of the providers, farms, distributors and providers of kratom working with the Partner.

2.    PRICING

a) Partner agrees to sell and Alphabet Wholesale agrees to purchase 275 tons/ month at $13.50 and agrees to $13.00/Kg for quantities exceeding 300 tons per month and maintain that purchase price up to 400 tons/ month. This will be the maximum price for kratom, dispite market fluctuations.

b) If and when purchase quantity exceeds 400 tons/month, the price will decrease to $12.25/Kg

c) all payments will be made after the material is delivered, QC approved and accepted into inventory. Payments will be remitted within 21 days of inventory entry to facilities

3.    TERM AND TERMINATION.

(a)     Term. This Agreement will become effective as of the Effective Date. Unless terminated earlier in accordance with this Section, this Agreement will continue until 18 months from the Effective Date (the "Term"). This term is renewable upon mutual written agreement of the Parties for an additional five-year term. The parties agree to commence discussions on renewal at minimum 6 months prior to renewal and agree to use best efforts to extend the engagement.

(b)     Termination. This Agreement may be terminated:

(i)     by Alphabet Wholesale on provision of 120 days written notice to the other party and by Partner in the event that it provides 120 days written notice which may occur only if ;

(ii)     by either party for a material breach of any provision of this Agreement by the other party, if the other party's material breach is not cured within 15 business days of receipt of written notice of the breach, except for non-payment of product by Alphabet Wholesale; or

Initials _Mɟ_ , _TB_

3

(iii)     Alphabet Wholesale at any time and without prior notice if the Partner is convicted of any crime or offense, fails or refuses to comply with the written policies or reasonable directives of Alphabet Wholesale, or takes an action or fails to take action and such action or inaction constitutes gross negligence or willful misconduct as determined by Alphabet Wholesale in its reasonable discretion.

(iv) the product is deemed to be not legal, or contaminated material cannot be remedied and the supply chain or Partner falls short of meeting the requirements and deliverable quantities of kratom aforementioned in this agreement.

4.    NO CONFLICT OF INTEREST; EXCLUSIVITY;  The Partner hereby represents and warrants to Alphabet Wholesale that, to the best of its knowledge, it is not currently obliged under any existing contract or other duty that conflicts with or is inconsistent with this Agreement. During the Term, this Agreement shall be exclusive on the part of the Partner and Partner may not provide the same or similar supply services to any other party.  The Partner acknowledges and agrees that Alphabet Wholesale may enter into similar arrangements with other parties outside of USA.

5.    CONFIDENTIAL INFORMATION.  During the Term and for a period of 5 years thereafter, each party shall retain in confidence and not disclose to any third-party Confidential Information obtained from the other under this Agreement. "Confidential Information" means proprietary information, technical data, trade secrets, or know-how, including, but not limited to, research, product plans, products, services, customer lists, markets, software, developments, inventions, processes, formulas, technology, designs, drawings, engineering, hardware configuration information, marketing, finances, or other business information disclosed to one party by the other, either directly or indirectly. Neither party will use Confidential Information except for the express purpose of performing this Agreement. The Partner may use the Confidential Information to the extent necessary for negotiations, discussions, and consultations with Alphabet Wholesale personnel or authorized representatives or for any other purpose Alphabet Wholesale may hereafter authorize in writing. Alphabet Wholesale and its affiliates cannot use any of the Partner's farms unless authorized by the Partner in writing.

Alphabet Wholesale
By: _____
Name: Mark Jennings
Title: Director
Date: 11/02/2020

Smash Hit Trading LLC
By: _____
Name: THOMAS BAYAUP
Date: 10-26-2020

4

# EXHIBIT 2
# REDACTED
# PENDING MOTION
# TO SEAL