Kirk D. Dillman (SBN 110486)
kdillman@mckoolsmithhennigan.com
M. Storm Byrd (SBN 319387)
sbyrd@mckoolsmithhennigan.com
MCKOOL SMITH HENNIGAN, P.C.
300 South Grand Avenue, Suite 2900
Los Angeles, California 90071
Telephone:   (213) 694-1200
Facsimile:    (213) 694-1234

Jeff Mueller (admitted *pro hac vice*)
jmueller@daypitney.com
Gregory R. Bruno (admitted *pro hac vice*)
gbruno@daypitney.com
DAY PITNEY LLP
605 Third Avenue, 31st Floor
New York, NY 10158-1803
Telephone:   (212) 297-5800
Facsimile:    (212) 916-2940

Attorneys for Defendant
LGI Holdings LLC d/b/a Alphabet Wholesale

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# WESTERN DIVISION

| | |
|---|---|
| CLEANVIEW DISTRIBUTION GROUP LLC, a Wyoming limited liability company; SMASH HIT TRADING LLC, a Wyoming limited liability company; and GREEN GOLD ICE LLC, a Wyoming limited liability company,<br><br>Plaintiffs,<br><br>vs.<br><br>LGI HOLDINGS, LLC, a Wyoming limited liability company; ALPHABET WHOLESALE, a business organization, form unknown; ALPHABET WHOLESALE, INC., a corporation; ALPHABET WHOLESALE, LLC, a limited liability company; PEYTON PALAIO, an individual; TED PALAIO, an individual; LAWRENCE LARSEN, an individual; MARK JENNINGS, an individual; MARK JENNINGS, individually and as a director of Alphabet Wholesale, business form unknown; MARK JENNINGS, individually and doing business as Alphabet Wholesale; JASON FOSTER, an individual; and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No. 2:21-cv-07178 SB (JCx)<br><br>**NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT, OR ALTERNATIVELY TO TRANSFER VENUE; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date: November 19, 2021<br>Time: 8:30 AM<br>Place: Courtroom 6C<br>Before: Hon. Stanley Blumenfeld, Jr.<br><br>Removal from Los Angeles County Superior Court on September 7, 2021<br><br>Trial Date: November 7, 2022 |

McKool Smith Hennigan, P.C.
Los Angeles, CA

# NOTICE OF MOTION AND MOTION

NOTICE IS HEREBY GIVEN THAT on November 19, 2021 at 8:30 am, before the Honorable Stanley Blumenfeld, Jr., in Courtroom 6C, of the United States Courthouse for the Central District of California, Western Division, 350 West 1st Street, Los Angeles, California 90012, defendant LGI Holdings LLC (d/b/a Alphabet Wholesale) ("LGI" or "Defendant") will and hereby does move the Court to dismiss the Complaint filed by Plaintiffs Cleanview Distribution Group, Smash Hit Trading LLC, and Green Gold Ice LLC (collectively "Plaintiffs") pursuant to Federal Rule of Civil Procedure ("FRCP") 12(b)(2) for lack of personal jurisdiction, FRCP 12(b)(3) for improper venue, and FRCP 12(b)(6) for failure to state a claim upon which relief can be granted; or, alternatively, to transfer this action to the United States District Court for the District of Wyoming pursuant to 28 U.S.C. §§ 1404(a) and/or 1406(a).

This motion is made following the conference of counsel pursuant to Local Rule 7-3 which took place on September 17, 2021. Counsel thoroughly discussed the substance and potential resolution of this motion by phone, but were unable to reach a resolution. While Plaintiffs initially represented that they intended to file an amended complaint, they have failed and refused to do so by LGI's deadline to file its motion to dismiss despite LGI's repeated requests, therefore necessitating this motion.

As set forth in the accompanying Memorandum of Points and Authorities, there is good cause for the relief requested. The Complaint should be dismissed because this Court lacks personal jurisdiction over any of the defendants, who are each citizens of different states and do not have sufficient minimum contacts with California. Further, venue is improper in this District as this case does not fall within any of the three categories set forth in 28 U.S.C. § 1391(b). Additionally, none of Plaintiffs' causes of action state a claim upon which relief may be granted.

Alternatively, this case should be transferred to the United States District Court for the District of Wyoming pursuant to 28 U.S.C. § 1404(a) and/or 1406(a). Venue is proper in that District pursuant to 28 U.S.C. § 1391(b)(3), and all claims asserted by

1 │ plaintiff Cleanview are subject to a contractual forum-selection clause providing for

2 │ sole and exclusive jurisdiction by the federal and state courts of Wyoming.

3 │     This Motion is based on this Notice of Motion and Motion; the accompanying

4 │ Memorandum of Points and Authorities; the Declaration of Peyton Palaio dated

5 │ October 11, 2021; the Declaration of Jeffrey P. Mueller dated October 14, 2021 and

6 │ the exhibit thereto; the pleadings and papers filed in this action; and such further

7 │ argument and matters as may be offered at the time of the hearing of this Motion.

8 │ DATED: October 14, 2021                 Respectfully submitted,

9 │                                  MCKOOL SMITH HENNIGAN, P.C.

10

11 │                                  BY: /s/

12 │                                  KIRK D. DILLMAN
  │                                  M. STORM BYRD

13

14 │                                  JEFFREY MUELLER (admitted *pro hac vice*)
  │                                  jmueller@daypitney.com

15 │                                  GREGORY BRUNO (admitted *pro hac vice*)
  │                                  gbruno@daypitney.com

16 │                                  DAY PITNEY LLP
  │                                  605 Third Avenue, 31st Floor

17 │                                  New York, New York 10158

18 │                                  Telephone: (212) 297-5800

19 │                                  Facsimile: (212) 916-2940

20

21 │                                  *Counsel for LGI Holdings LLC d/b/a Alphabet*
  │                                  *Wholesale*

22

23

24

25

26

27

28

# TABLE OF CONTENTS

-Page-

I. INTRODUCTION ........................................................................... - 1 -

II. THE COMPLAINT'S ALLEGATIONS ....................................... - 1 -

    A. The Exclusive Supply Agreement ..................................... - 2 -

    B. The MOU and NDA .......................................................... - 2 -

    C. The Alleged Dispute .......................................................... - 3 -

III. LEGAL STANDARDS .................................................................. - 4 -

IV. ARGUMENT ................................................................................. - 5 -

    A. The Complaint Should Be Dismissed Pursuant to FRCP 12(b)(2) Because this Court Lacks Personal Jurisdiction Over the Defendants .......................................................... - 5 -

        1. This Court Lacks General Personal Jurisdiction Over the Defendants. .................................................. - 5 -

        2. This Court Lacks Specific Personal Jurisdiction Over the Defendants. ................................................ - 6 -

    B. The Complaint Should Be Dismissed Pursuant to FRCP 12(b)(3) Insofar as Venue in this District is Improper. ..................................... - 11 -

    C. The Complaint Should Be Dismissed Pursuant to FRCP 12(b)(6) Because It Fails to State a Claim Upon Which Relief May Be Granted. ....................................... - 12 -

        1. Plaintiffs' First Cause of Action Fails to State a Claim for Fraud in the Inducement. ........................ - 12 -

        2. Plaintiffs' Second Cause of Action Fails to State a Claim for Tortious Interference With Contractual Relationships. ............ - 15 -

        3. Plaintiffs' Third Cause of Action Fails to State a Claim for Breach of the MOU and NDA. .................................................. - 17 -

        4. Plaintiffs' Fourth Cause of Action Fails to State a Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing Inherent in the MOU/NDA. ........................................ - 18 -

5.     Plaintiffs' Fifth Cause of Action Fails to State a Claim for Breach of the ESA. ................................................. - 20 -

6.     Plaintiffs' Sixth Cause of Action Fails to State a Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing Inherent in the ESA. ........................................... - 21 -

7.     Plaintiffs' Seventh Cause of Action Fails to State a Claim for Unjust Enrichment. ............................................. - 22 -

8.     Plaintiffs' Eighth and Ninth Causes of Action Fails to State Claims for Declaratory Judgment. ............................. - 23 -

D.     Plaintiffs' Claims Against "Alphabet Wholesale" Must Be Dismissed Because It is a Non-Entity Trade Name. ......................... - 23 -

E.     Alternatively, This Action Should Be Transferred to the District of Wyoming Pursuant to 28 U.S.C. § 1404(a). ....................... - 24 -

V.     CONCLUSION ................................................................... - 25 -

McKool Smith Hennigan, P.C.
Los Angeles, CA

ii

**Cases**

*Abrams Shell v. Shell Oil Co.*,
  165 F. Supp. 2d 1096 (C.D. Cal. 2001)...........................................................4

*In re Am. Apparel, Inc. S'holder Litig.*,
  855 F. Supp. 2d 1043 (C.D. Cal. 2012).......................................................5, 18

*Apple Inc. v. VoIP-Pal.com, Inc.*,
  506 F.Supp.3d 947 (N.D. Cal. Dec. 11, 2020) .................................................4

*Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*,
  571 U.S. 49 (2013).......................................................................................5, 11

*Bear Peak Res., LLC v. Peak Powder River Res., LLC*,
  2017 WY 124, 403 P.3d 1033 (Wyo. 2017)....................................................19

*Bella Canvas, LLC v. TSC Apparel, LLC*,
  No. 20-cv-05947, 2020 WL 7048306 (C.D. Cal. Sept. 17, 2020) ..............17, 20

*Bevis v. Terrace View Partners, LP*,
  33 Cal. App. 5th 230 (2019) ...........................................................................21

*Bextel v. Hancock, III*,
  No. 17742, 2019 WL 12021816 (Wyo. Dist. May 17, 2019) .....................16, 17

*Birt v. Wells Fargo Home Mortg., Inc.*,
  2003 WY 102, 75 P.3d 640 (Wyo. 2003)........................................................19

*Borisov v. Alamo Rent A Car*,
  No. C18-5847, 2019 WL 316710 (W.D. Wash. Jan. 24, 2019), *aff'd*,
  796 F. App'x 949 (9th Cir. 2020) ....................................................................23

*Boschetto v. Hansing*,
  539 F.3d 1011 (9th Cir. 2008) ..........................................................................8

*Bristol-Myers Squibb Co. v. Superior Court*,
  137 S. Ct. 1773 (2017)......................................................................................6

McKool Smith Hennigan, P.C.
Los Angeles, CA

*Burger v. Kuimelis*,
    325 F.Supp.2d 1026 (N.D. Cal. 2004)..................................................................23

*Cal. Med. Ass'n, Inc. v. Aetna U.S. Healthcare of Cal., Inc.*,
    94 Cal. App. 4th 151 (2001) ...............................................................................22

*Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*,
    222 Cal. App. 3d 1371 (Ct. App. 1990) ........................................................21, 22

*Daimler AG v. Bauman*,
    571 U.S. 117 (2014)........................................................................................5, 6

*Dos Beaches, LLC v. Mail Boxes Etc., Inc.*,
    No. 09-cv-2401, 2012 WL 506072 (S.D. Cal. Feb. 15, 2012) ...........................18

*Elworthy v. First Ten. Bank*,
    2017 WY 33, 391 P.3d 1113 (Wyo. 2017)......................................................13, 14

*Ford Motor Co. v. Mont.a Eighth Jud. Dist. Ct.*,
    141 S. Ct. 1017,1025 (2021).............................................................................9, 10

*Fuku-Bonsai, Inc. v. E.I. Du Pont de Nemours & Co.*,
    187 F.3d 1031 (9th Cir. 1999) ..............................................................................12

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
    564 U.S. 915 (2011)..............................................................................................5

*Gore v. Sherard*,
    2002 WY 114, 50 P.3d 705 (Wyo. 2002).......................................................15, 16

*Gustafson v. BAC Home Loans Servicing, LP*,
    294 F.R.D. 529 (C.D. Cal. 2013).....................................................................12, 13

*Hawaii Forest & Trial Ltd. v. Davey*,
    556 F. Supp. 2d 1162 (D. Haw. 2008) .............................................................7, 10

*Henson v. Fid. Nat. Fin., Inc.*,
    No. 1:13-CV-01452-AWI, 2014 WL 641978 (E.D. Cal. Feb. 18, 2014) ..........25

*Hunter v. Reece*,
    2011 WY 97, 253 P.3d 497 (Wyo. 2011).............................................................22

*Koresko v. RealNetworks, Inc.*,
    291 F. Supp. 2d 1157 (E.D. Cal. 2003) ...............................................................24

*Marquez v. Toll Global Forwarding (USA), Inc.*
No.02667, 2021WL 2808691 (C.D. Cali. Jul. 06, 2021) ......................17, 19, 20

*N. Cal. Dist. Council of Laborers v. Pittsburg–Des Moines Steel Co.*,
69 F.3d 1034 (9th Cir.1995) ...............................................................24

*Name.Space, Inc. v. Internet Corp. for Assigned Names & Numbers*,
795 F.3d 1124 (9th Cir. 2015) .............................................................16

*Niantic, Inc. v. Global++*,
No. 19-CV-03425-JST, 2019 WL 8333451 (N.D. Cal. Sept. 26, 2019)...........23

*Novian & Novian, LLP v. Wireless Xcessories Grp., Inc.*,
No. 20-cv-11715, 2021 WL 1577786 (C.D. Cal. Apr. 19, 2021) ..............7, 9, 10

*In re Packaged Seafood Prod. Antitrust Litig.*,
338 F. Supp. 3d 1118 (S.D. Cal. 2018) ..................................................6

*Payne v. Cal.Dep't of Corr. & Rehab.*,
No. CV 15-2815-PA (SP), 2017 WL 10560641 (C.D. Cal. Sept. 27, 2017) .....21

*Pinkerton's, Inc. v. Superior Court*,
49 Cal.App.4th 1342 (1996) ...............................................................23

*Rogers v. Wright*,
2016 WY 10, 366 P.3d 1264 (Wyo. 2016).............................................13

*Rojas v. Bosch Solar Energy Corp.*,
443 F. Supp. 3d 1060 (N.D. Cal. 2020)..................................................13

*Royal Hawaiian Orchards, L.P. v. Olson*,
No. CV 14-8984, 2015 WL 3948821 (C.D. Cal. June 26, 2015).......................4

*Schepps v. Howe*,
665 P.2d 504 (Wyo. 1983)............................................................13, 14

*Schlinger v. McGhee*,
2012 WY 7, 268 P.3d 264 (Wyo. 2012), *as amended on reh'g* (Feb. 7, 2012)..17

*Schwarzenegger v. Fred Martin Motor Co,.*
374 F.3d 797 (9th Cir. 2004) .........................................................8, 9, 10

*Smith v. Allstate Ins. Co.*,
160 F. Supp. 2d 1150 (S.D. Cal. 2001) .................................................14

v

McKool Smith Hennigan, P.C.
Los Angeles, CA

*Tortilla Factory, LLC v. Health-Ade LLC*,
No. CV-179090, 2018 WL 6174708 (C.D. Cal. July 13, 2018) ........................14

*U.S. Bank, N.A. for Registered Holders of ML-CFC Com. Mortg. Tr. 2007-7 v. Miller*, No. CV 12-05632, 2013 WL 12183654 (C.D. Cal. Sept. 19, 2013) ..14

*United Safeguard Distributors Ass'n, Inc. v. Safeguard Bus. Sys., Inc.*,
145 F. Supp. 3d 932 (C.D. Cal. 2015) .....................................................23

*United States v. Ritchie*,
342 F.3d 903 (9th Cir. 2003) ..................................................................5

*VFD Consulting, Inc. v. 21st Servs.*,
425 F. Supp. 2d 1037 (N.D. Cal. 2006) ..................................................15

*Walden v. Fiore*,
571 U.S. 277 (2014) .................................................................8, 9, 10, 11

*Waln v. Dysart Sch. Dist.*,
No. CV 20-00799, 2021 WL 1255521 (D. Ariz. Mar. 1, 2021) ...................14

*Wilder v. Cody Cnty. Chamber of Com.*,
1994 WY 7, 868 P.2d 211 (Wyo. 1994) ..................................................19

*In re Winick*,
610 B.R. 651 (S.D. Cal. 2019) ...............................................................13

*Wood v. N. Am. Van Lines, Inc.*,
No. 8:20-cv-02092, 2021 WL 3124155 (C.D. Cal. July 22, 2021) ........6, 7, 9, 11

*Yi v. Circle K Stores, Inc.*,
258 F. Supp. 3d 1075 (C.D. Cal. 2017), *aff'd*, 747 F. App'x 643
(9th Cir. 2019) ......................................................................................19

*Zaklit v. Glob. Linguist Sols., LLC*,
No. Civ. 1308654, 2014 WL 12521725 (C.D. Cal. Mar. 24, 2014)..................25

**Statutes**

28 U.S.C. § 1391 .....................................................................................12

28 U.S.C. § 1391(b) ................................................................................11

28 U.S.C. § 1391(b)(1) ...........................................................................11

28 U.S.C. § 1391(b)(3) ...........................................................................12

28 U.S.C. §§ 1404(a) ........................................................................1, 5, 25

28 U.S.C. § 1406(a) ........................................................................11, 12, 25

**Rules**

FRCP 12(b)(2) ........................................................................................5

FRCP 12(b)(3) ...........................................................................4, 11, 12

FRCP 12(b)(6) ...........................................................................5, 12, 23

FRCP 17(b) ............................................................................................23

McKool Smith Hennigan, P.C.
Los Angeles, CA

NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

Pursuant to Federal Rules of Civil Procedure ("FRCP") 12(b)(2), (3), and (6), defendant LGI Holdings LLC (d/b/a Alphabet Wholesale) ("LGI" or "Defendant")[1] moves to dismiss the Complaint (the "Complaint") filed by Plaintiffs Cleanview Distribution Group LLC ("Cleanview"), Smash Hit Trading LLC ("Smash Hit"), and Green Gold Ice, LLC ("Green Gold") (collectively, "Plaintiffs"), or alternatively, to transfer this action to the United States District Court for the District of Wyoming pursuant to 28 U.S.C. §§ 1404(a) and/or 1406(a), as set forth below:

## I.    INTRODUCTION

This Court should dismiss this action for several reasons. <u>First</u>, this Court lacks personal jurisdiction over any of the defendants. Plaintiffs seek to hail defendants – citizens of Georgia, Washington, Massachusetts, and Wyoming – into court in California to litigate claims purportedly arising out of transactions between Wyoming LLCs, and based on actions allegedly taken primarily in Indonesia. <u>Second</u>, this is not the proper venue for this dispute. None of the defendants reside in this District, none of the defendants are subject to personal jurisdiction in this District, and a substantial part of the events or omissions giving rise to the claims did not occur in this District. <u>Third</u>, Plaintiffs do not state claims upon which relief can be granted. Even accepting the purported "facts" set forth in the Complaint as true, Plaintiffs' claims are each defective for the reasons set forth below. <u>Finally</u>, named defendants "Alphabet Wholesale Inc., Alphabet Wholesale LLC, and Alphabet Wholesale, business form unknown" are non-existent entities that lack the capacity to be sued. Accordingly, this action should be dismissed, or, alternatively, transferred to the District of Wyoming pursuant to 28 USC §§ 1404(a) or 1406(a).

## II.    THE COMPLAINT'S ALLEGATIONS

Plaintiffs are Wyoming LLCs in the business of "import[ing] and distribut[ing]

---

[1] The remaining defendants have not been served with the summons and complaint in this action.

kratom (mitragyna speciose), a plant indigenous to Southeast Asia that may be processed for various uses, including fertilizer or in the alternative, holistic supplements." (Compl., ECF No. 27, ¶ 1, 6-8, 25). LGI is also a Wyoming LLC. (*Id.* at ¶ 9). It maintains its principal place of business in Georgia, and does business under the trade name "Alphabet Wholesale." (Palaio Decl., at ¶ 3-4). LGI and its affiliates are "the largest kratom business in the United States." (Compl. ¶¶ 2, 28).

## A.    The Exclusive Supply Agreement

The Complaint alleges that "on or about October 26, 2020, Alphabet, and Smash Hit and Green Gold entered into an Exclusive Supply Agreement ["ESA"] . . . by which Smash Hit and Green Gold became Alphabet's exclusive supplier of kratom . . . ." (Compl. ¶ 30). Pursuant to the ESA, Smash Hit, Green Gold, and "any of their partners, affiliates, owners or subsidiaries" (defined in the ESA as the "Partner") were to "maintain an exclusive relationship to [LGI] and not solicit or sell kratom (mitragyna speciose) to other buyers." (ESA, ECF No. 27, at p. 1 (first recital); §§ 1(a)(viii), 4). The ESA *does not* require LGI to purchase kratom exclusively from the Partner. The ESA provides contractual protections for LGI against the Partner supplying defective material. It requires the Partner to "immediately replace any material supplied that does not pass incoming testing and specifications" plus "an additional 25%" which is to be "sent out within 24 hours of receiving notice of rejection." (ESA § 1(a)(vi)).

The ESA obligates the Partner to allow LGI to have "direct communication with farmers to help implement GAP procedures at their farms." (ESA § 1(a)(ix)). LGI is to provide "feedback on materials from specific farms and help to choose premiere farms to help avoid any contaminated material or not-to-spec shipments," and is expressly "responsible for the oversight of the providers, farms, distributors and providers of kratom working with Partner." (*Id.* at § 1(b)(iii)).

## B.    The MOU and NDA

The Complaint further alleges that beginning in "early 2021," LGI "began to

engage in discussions to acquire [Plaintiffs'] import business." (Compl. ¶ 36). "After a series of discussions . . . Cleanview and LGI entered in[to] a Memorandum of Understanding (the 'MOU')." (*Id.* ¶ 39). The MOU's express "purpose" is to "outline the offering terms for" LGI's "opportunity to acquire ownership in" Cleanview, and its terms anticipate the negotiation of a further "formal Purchase and Sale Agreement ('PSA')." (MOU, ECF No. 27, at p. 1). It sets forth contingencies that must be met in the formal PSA, as well as additional contingencies that must be met before the MOU itself even becomes a "binding commitment." (*Id.* at p. 2-3).

"The MOU incorporated as Exhibit A, a Confidentiality and Non-Disclosure Agreement (the 'NDA')." (*Id.* at ¶ 40). At § 9.2, the NDA contains a choice-of-law and exclusive jurisdiction clause that provides as follows:

> The validity, construction and performance of this Agreement shall be governed and construed in accordance with the laws of the State of WY applicable to contracts made and to be wholly performed within such state, without giving effect to any conflict of laws provisions thereof. The Federal and state courts located in the State of WY shall have sole and exclusive jurisdiction over any disputes arising under, or in any way connected with or related to, the terms of this Agreement.

## C.     The Alleged Dispute

After executing the MOU and NDA, the parties began negotiating a formal definitive purchase agreement. (Compl. ¶ 43). As part of those negotiations, Cleanview arranged for LGI's representatives to visit "contacts, suppliers, farmers, and others in Indonesia." (*Id.* at ¶¶ 41-42). At the same time, "LGI continued to place kratom orders from" Plaintiffs under the ESA. (Compl. ¶ 44). Certain shipments received by LGI failed to meet minimum testing specifications, and LGI sent notices of defect to Plaintiffs pursuant to the terms of the ESA. (*Id.* at ¶ 38). While Plaintiffs allege that LGI "did not return the supposedly defective product," Plaintiffs do not allege that they paid, or even offered to pay, the expenses of returning the defective product as required by the ESA. (Compl. ¶ 38).

The Complaint then alleges that negotiations concerning the definitive

McKool Smith Hennigan, P.C.
Los Angeles, CA

purchase agreement began to fall apart. (Compl. ¶¶ 47-57). Plaintiffs allege that they "are informed that Ted Palaio and others directly contacted farmers in the Cleanview Companies supply chain – farmers were only were identified [sic] pursuant to the NDA – and began requesting that farmers undertake various changes to their practices." (Compl. ¶ 48). They further allege that, "Ted Palaio and the other LGI executives have been actively engaged with local Indonesian individuals and entities that are part of Cleanview's supply chain." (*Id*. at 49). The Complaint ignores that none of these actions are prohibited by the NDA. Indeed, some of these actions are expressly authorized, and even required, by both the ESA and the MOU. (ESA §§ 1(a)(ix), 1(b)(iii); MOU at pp. 2-3). Plaintiffs further blame defendants for the deterioration of Plaintiffs' relationship with one of their suppliers, Indobotanical Trading Company ("Indobotanical"), alleging that "LGI failed to pay several of Indobotanical's invoices," causing Indobotanical to threaten to engage in self-help. (Compl. ¶ 50).

"[O]n June 10, 2021, [Plaintiffs] demanded that LGI cease and desist any use of information or materials in breach of the terms of the NDA, and that LGI immediately pay the outstanding invoices." (*Id*. ¶ 52). LGI responded to that letter on June 29, 2021, denying the baseless assertions made Plaintiffs' June 10th letter. (*Id*. at ¶ 53; *see also* Mueller Decl., Ex. A). LGI also sent Plaintiffs a separate notice regarding Plaintiffs' breaches of the ESA. (*Id*.). Plaintiffs then instituted this action.

## III.    LEGAL STANDARDS

"In a motion challenging personal jurisdiction under [FRCP] 12(b)(2), the plaintiff . . . has the burden of establishing that jurisdiction exists." *Apple Inc. v. VoIP-Pal.com, Inc.*, 506 F.Supp.3d 947, 956 (N.D. Cal. Dec. 11, 2020). The plaintiff must make a prima facie showing of jurisdictional facts. *See Abrams Shell v. Shell Oil Co*., 165 F. Supp. 2d 1096, 1103 (C.D. Cal. 2001). Similarly, when a defendant challenges venue under FRCP 12(b)(3), "the plaintiff is required to establish that venue is proper as to each defendant and as to each claim." *Royal Hawaiian Orchards, L.P. v. Olson*,

No. CV 14-8984, 2015 WL 3948821, at *1 (C.D. Cal. June 26, 2015).

To survive a motion to dismiss under FRCP 12(b)(6), "a complaint must 'contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *In re Am. Apparel, Inc. S'holder Litig.*, 855 F. Supp. 2d 1043, 1060 (C.D. Cal. 2012). A court may consider "documents attached to the complaint [or] documents incorporated by reference in the complaint," (*United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003)), and need not "accept as true conclusory allegations which are contradicted by" such documents. *In re Am. Apparel, Inc. S'holder Litig.*, 855 F. Supp. 2d at 1060.

A forum selection clause is enforced through a motion to transfer venue under 28 U.S.C. § 1404(a). *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 59–60 (2013). A "proper application of § 1404(a) requires that a forum-selection clause be 'given controlling weight in all but the most exceptional cases.'" *Id.* (citation omitted).

## IV. ARGUMENT

### A. The Complaint Should Be Dismissed Pursuant to FRCP 12(b)(2) Because this Court Lacks Personal Jurisdiction Over the Defendants.

The Complaint should be dismissed because this Court lacks personal jurisdiction over any of the defendants. Fed. R. Civ. P. 12(b)(2). "Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons." *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014). California's long-arm statute is co-extensive with constitutional due process (*Id.*), pursuant to which Courts may only exercise personal jurisdiction over an out-of-state defendant if that defendant has "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 923 (2011).

#### 1. This Court Lacks General Personal Jurisdiction Over the Defendants.

None of the defendants are subject to general personal jurisdiction in California. A court may exercise general personal jurisdiction over a defendant only when that defendant's affiliations with the forum state "are so 'continuous and systematic' as to render them essentially at home in the forum State." *Daimler*, 571 U.S. at 127 (quoting *Goodyear*, 564 U. S. at 919). "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile ..." *Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773, 1780 (2017). Similarly, absent extraordinary circumstances, an LLC is "at home" only in its place of organization and its principal place of business. *Daimler*, 571 U.S. at 118; *see also In re Packaged Seafood Prod. Antitrust Litig.*, 338 F. Supp. 3d 1118, 1139 n.14 (S.D. Cal. 2018) ("Generally, courts apply *Daimler* to non-corporate business entities.").

Here, the defendants are not "at home" in California. LGI is an LLC organized under Wyoming law, and maintains its principal place of business in Georgia. (Palaio Decl., at ¶ 3). Although not served, Peyton Palaio and Mark Jennings are domiciled in Georgia, Ted Palaio and Lawrence Larsen are domiciled in Washington, and Jason Foster is domiciled in Massachusetts. (ECF No. 1, at ¶¶ 23-27).

## 2. This Court Lacks Specific Personal Jurisdiction Over the Defendants.

Nor may this Court exercise specific personal jurisdiction over the defendants. Courts in the Ninth Circuit apply a three-prong test to determine whether a District Court may exercise specific personal jurisdiction over a nonresident defendant:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws . . . ; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Wood v. N. Am. Van Lines, Inc.*, No. 8:20-cv-02092, 2021 WL 3124155, at *3 (C.D. Cal. July 22, 2021). "The plaintiff bears the burden of satisfying the first two prongs

McKool Smith Hennigan, P.C.
Los Angeles, CA

1    of the test." *Id.* at \*3. Only if a plaintiff satisfies the first two elements does the burden

2    shift to the defendant to demonstrate that the exercise of jurisdiction would not be

3    reasonable. *Id.*

4       With respect to the first prong, "[a]vailment and direction are . . . two distinct

5    concepts. A purposeful availment analysis is most often used in suits sounding in

6    contract. A purposeful direction analysis, on the other hand, is most often used in suits

7    sounding in tort." *Novian & Novian, LLP v. Wireless Xcessories Grp., Inc.*, No. 20-cv-

8    11715, 2021 WL 1577786, at \*5 (C.D. Cal. Apr. 19, 2021) (citation omitted). The

9    "purposeful direction" analysis requires application of the "three-part 'effects' test

10   derived from *Calder v. Jones*." *Id.* at \*5. The "effects test" in turn "requires that the

11   defendant allegedly have (1) committed an intentional act, (2) expressly aimed at the

12   forum state, (3) causing harm that the defendant knows is likely to be suffered in the

13   forum state." *Id.* (citation omitted). The "purposeful availment" analysis "requires that

14   the defendant 'have performed some type of affirmative conduct which allows or

15   promotes the transaction of business within the forum state.'" *Hawaii Forest & Trial*

16   *Ltd. v. Davey*, 556 F. Supp. 2d 1162, 1169 (D. Haw. 2008) (citation omitted).

17       Plaintiffs' claims in this action fall into two buckets: (1) those asserted by

18   Cleanview relating to the MOU/NDA; and (2) those asserted by Smash Hit and Green

19   Gold relating to the ESA. Plaintiffs cannot meet their burden of establishing the first

20   two prongs of the specific personal jurisdiction analysis for either bucket of claims.

21         **a.**      **Claims Relating to the MOU/NDA**

22             **i.**      **Plaintiffs Cannot Satisfy the Purposeful Direction or Purposeful Availment Tests.**

23

24       The first through fourth, seventh, and ninth causes of action concern the

25   MOU/NDA. These claims (asserted by Cleanview only) sound both in contract and in

26   tort, thereby implicating both the "purposeful direction" and "purposeful availment"

27   tests. *See Novian*, 2021 WL 1577786, at \*5. Plaintiffs' allegations with respect to

28   these claims are insufficient to satisfy either test.

1    With respect to the "purposeful direction" test applicable to Cleanview's

2    contract claims, LGI's alleged conduct took place in Indonesia, not California.

3    Cleanview alleges that LGI breached the MOU/NDA by: "actively engaging and

4    cultivating relationships with local Indonesian individuals . . . "; "lobbying Indonesian

5    officials"; and "[f]ailing to pay outstanding invoices due" to an Indonesian vendor.

6    (Compl. ¶ 79). Beyond conclusory boilerplate allegations that California "is where the

7    subject contracts were made and to be performed, where the parties' obligations

8    occurred, [and where] the breaches . . . occurred . . . ," the Complaint's only

9    allegations of connections with California are that Cleanview maintains a warehouse

10   in Los Angeles, and the (incorrect) assertion that the parties held some discussions

11   regarding the MOU in Los Angeles. (Compl. ¶¶ 24, 26, 39.) "As the Supreme Court

12   has expressly cautioned, a contract alone does not automatically establish minimum

13   contacts in the plaintiff's home forum." *Boschetto v. Hansing*, 539 F.3d 1011, 1017

14   (9th Cir. 2008). And it is *LGI's* conduct in the forum jurisdiction that matters, not

15   *Plaintiffs'* operations. *Walden v. Fiore*, 571 U.S. 277, 285–86 (2014).

16       Further, defendants received no "benefit, privilege, or protection from

17   California" in connection with the MOU/NDA. *Schwarzenegger v. Fred Martin*

18   *Motor Co.*, 374 F.3d 797, 803 (9th Cir. 2004). The parties expressly agreed that the

19   validity of, construction of, and performance under the NDA would be governed by

20   Wyoming law. (NDA, ECF No. 27, § 9.2). Thus, the "traditional quid quo pro

21   justification for finding purposeful availment does not apply." *Schwarzenegger*, 374

22   F.3d at 803.

23       Nor was defendants' alleged tortious conduct "purposefully directed" towards

24   California. Plaintiffs allege that defendants used information obtained under the

25   MOU/NDA to interfere with Cleanview's contractual relationships "with kratom

26   farmers, distributors, and suppliers *in Indonesia*." (Compl. ¶ 69-70) (emphasis

27   supplied). Further, the core of Plaintiffs' fraud-in-the-inducement claim is that

28   defendants' misrepresented that they intended to acquire Cleanview (a Wyoming

- 8 -

(Compl. ¶ 61). Defendants' supposedly tortious conduct therefore does not constitute sufficient minimum contacts with California insofar as it all allegedly occurred elsewhere in the world. *See Walden*, 571 U.S. at 291.

### ii. Plaintiffs Cannot Satisfy the "Arising Out of Prong."

Nor do these allegations satisfy the second ("arising out of") prong of the specific personal jurisdiction test. For claims to "arise out of or relate to" defendants' contacts with the forum, "there must be 'an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.'" *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1025 (2021). As discussed, the only alleged connections between Cleanview's MOU/NDA claims and California are that Cleanview maintains a warehouse in Los Angeles and the (incorrect) allegation that the parties held some discussions regarding the MOU in Los Angeles. (Compl. ¶¶ 24, 26, 39). But these are precisely the type of "random, isolated, or fortuitous" contacts that do not justify an exercise of personal jurisdiction. *Ford*, 141 S. Ct. at 1025. And further, these claims do not arise out of *defendants'* purposeful *in-state* activities.

Accordingly, Plaintiffs cannot carry their burden of satisfying either of the first two prongs of the specific personal jurisdiction test. *Schwarzenegger*, 374 F.3d at 802. Even if they could, hailing defendants, who are citizens of various other states, into California to defend a lawsuit concerning actions allegedly taken outside California in connection with a transaction between two Wyoming companies would not comport with fair play and substantial justice. *Wood*, 2021 WL 3124155, at *3.

### b. Claims Relating to The ESA

### i. Plaintiffs Cannot Satisfy the "Purposeful Direction" Test.

The fifth, sixth, and eighth causes of action concern the ESA. These claims (asserted by Smash Hit/Green Gold only) sound in contract, thus implicating only the

McKool Smith Hennigan, P.C.
Los Angeles, CA

"purposeful availment" test. *Novian*, 2021 WL 1577786, at *5. The fifth cause of action alleges LGI breached the ESA by "(i) [u]sing other suppliers for Alphabet's use in the United States; (ii) [f]ailing to purchase the minimum requirements set forth in the Supply Agreement; and (iii) failing to pay outstanding invoices." (Compl. ¶ 91). The sixth cause of action alleges that LGI breached the covenant of good faith implied in the ESA by "delivering improper notices of defect, . . . using improper testing, and failing to permit Smash Hit and Green Gold's own inspection of the purportedly defective product." (*Id*. at ¶ 97). The eighth cause of action seeks a declaration "that Smash Hit and Green Gold have not breached" the ESA. (*Id*. at ¶ 108).

Noticeably absent from these claims are any allegations concerning affirmative actions taken by LGI to avail itself of the privilege of doing business in California. *Hawaii Forest*, 556 F. Supp. 2d at 1169. That *Plaintiffs'* operations were in California is of no moment for purposes of analyzing *LGI's* contacts with California. *Walden*, 571 U.S. at 285–86. LGI received no "benefit, privilege, or protection from California" in connection with the ESA. *Schwarzenegger*, 374 F.3d at 803. Indeed, as with the MOU/NDA, the ESA reflects an agreement between *Wyoming* LLCs. (ESA at p. 1; Compl. ¶¶ 7-9). Accordingly, Plaintiffs cannot satisfy the first prong of the specific personal jurisdiction analysis.

### ii. Plaintiffs Cannot Satisfy the "Arising Out Of" Prong.

Plaintiffs' allegations also are insufficient to satisfy the second, "arising out of" prong of the specific personal jurisdiction test. *Novian*, 2021 WL 1577786, at *5. Plaintiffs have not alleged any "affiliation between the forum and the underlying controversy" such as an "activity or an occurrence that [took] place in the forum State and is therefore subject to the State's regulation." *Ford*, 141 S. Ct. at 1025. Even accepting Plaintiffs' allegations as true, defendants' alleged failure to pay a Wyoming LLC for product imported from Indonesia, delivery of notices of defective product to a Wyoming LLC, and use of "other suppliers . . . in the United States" do not allege

any "actions or occurrences" in the forum state. (Compl. ¶ 91, 97). And again, "the mere fact that [LGI's] conduct affected plaintiffs with connections to [California] does not suffice to authorize jurisdiction." *Walden*, 571 U.S. at 291.

Accordingly, Plaintiffs are unable to carry their burden of satisfying either of the first two prongs of the specific personal jurisdiction analysis. *Wood*, 2021 WL 3124155, at *3. And, even if they could, it would again be unreasonable to hail LGI, a Wyoming LLC, into court in California, based upon alleged breaches of a contract entered into with other Wyoming companies. *Wood*, 2021 WL 3124155, at *3.

### B. The Complaint Should Be Dismissed Pursuant to FRCP 12(b)(3) Insofar as Venue in this District is Improper.

This case should also be also be dismissed because venue is improper in this District. *See* FRCP 12(b)(3) and 28 U.S.C. § 1406(a). Venue in federal civil actions is governed by 28 U.S.C. § 1391(b), which provides that:

> A civil action may be brought in - (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

If a case does not fall within one of these three categories, "venue is improper, and the case must be dismissed or transferred under § 1406(a)." *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 56 (2013).

As a preliminary matter, none of the defendants reside in California, and none are subject to the Court's personal jurisdiction in California. (*See* Section IV.A, *supra*). Accordingly, neither of 28 U.S.C. § 1391(b)(1) or (3) are met here. Similarly, "a substantial part of the events or omissions giving rise to the claims" asserted in the Complaint did not occur in this District. As discussed in Section IV.A.2, *supra*, Plaintiffs' claims fall broadly into two buckets: (1) those relating to the MOU/NDA, and (2) those relating to the ESA. Regarding the former, defendants' conduct about

which Plaintiffs' complain took place *outside* of this District (largely in Indonesia). (*See* Section IV.A.2.a, *supra*). With respect to the latter, the ESA reflects an agreement between *Wyoming* limited liability companies, and none of defendants' alleged breaches thereof occurred in this District. (*See* Section IV.A.2.b, *supra*).

Accordingly, Plaintiffs cannot meet their burden of demonstrating that venue is proper in this District under 28 U.S.C. § 1391. This case should therefore be dismissed pursuant to Fed. R. Civ. P. 12(b)(3), or transferred to the District of Wyoming pursuant to 28 U.S.C. § 1406(a). Venue would be proper in that District pursuant to 28 U.S.C. § 1391(b)(3), and, as set forth in Section IV.E, *infra*, to the extent that they are not otherwise dismissed, the first through fourth, seventh, and ninth causes of action must all be transferred to that District in any event.

## C. The Complaint Should Be Dismissed Pursuant to FRCP 12(b)(6) Because It Fails to State a Claim Upon Which Relief May Be Granted.

Each of Plaintiffs' causes of action should also be dismissed because they fail to state claims upon which relief can be granted. Fed. R. Civ. P. 12(b)(6).

### 1. Plaintiffs' First Cause of Action Fails to State a Claim for Fraud in the Inducement.

The Complaint's first cause of action, asserted by Cleanview against all defendants for fraud-in-the inducement with respect to the MOU/NDA, is governed by Wyoming law. The NDA contains a choice-of-law clause which provides, in pertinent part, that "the validity, construction and performance of this Agreement shall be governed by and construed in accordance with the laws of the State of WY . . . ." (NDA, at § 9.2). This choice-of-law provision is enforceable and applies to Cleanview's fraudulent inducement claim. *See Gustafson v. BAC Home Loans Servicing, LP*, 294 F.R.D. 529, 537 (C.D. Cal. 2013) ("In assessing the enforceability of a choice-of-law provision, California courts follow the approach of section 187(2) of the Restatement (Second) of Conflict of Laws."); *Fuku-Bonsai, Inc. v. E.I. Du Pont de Nemours & Co.*, 187 F.3d 1031, 1033 n.3 (9th Cir. 1999) ("Under the *Restatement*,

the law selected by the parties in a choice-of-law provision governs a claim of fraudulent inducement to contract.").[2]

Under Wyoming law, "[t]he elements that must be alleged to support [a claim for fraud-in-the-inducement] are 1) the defendant made a false representation intending to induce action by the plaintiff; 2) the plaintiff reasonably believed the representation to be true; and 3) the plaintiff suffered damages in relying on the false representation." *Elworthy v. First Ten. Bank*, 2017 WY 33, ¶ 41, 391 P.3d 1113, 1124 (Wyo. 2017).[3] As a preliminary matter, Cleanview alleges that defendants made knowing misrepresentations "in multiple telephone conversations, Zoom conferences, and other communications from January through May 2021." (Compl. ¶ 59). However, the MOU and NDA were executed on March 10, 2021. (Compl. ¶ 39; MOU at pp.3-4; NDA at p. 5). Thus, to the extent the Complaint relies on alleged misrepresentations made *after* the execution of the documents, such cannot form the basis for a claim of fraud in the inducement. *See, e.g., Schepps v. Howe*, 665 P.2d 504, 509 (Wyo. 1983).

This deficiency highlights another fatal flaw with Cleanview's pleading – it fails to allege its claim for fraudulent inducement with sufficient particularity under Rule 9(b). To comply with the rule, Plaintiffs must specifically plead "matters such as the time, place, and contents of the false representations, as well as the identity of the person making the representation and what he obtained thereby. . . ." *Rogers v. Wright*, 2016 WY 10, ¶ 21, 366 P.3d 1264, 1273 (Wyo. 2016) (citation omitted). Thus, it is not sufficient for Cleanview to plead generally, as it has, that all defendants

---

[2] For the sake of completeness, under the Restatement approach, "the proponent of the choice-of-law provision bears the burden of showing that the chosen state 'has a substantial relationship to the parties or their transaction or there is any other reasonable basis for the parties' choice of law.'" *Gustafson*, 294 F.R.D. at 537. This test is met here because both Cleanview and LGI are organized in Wyoming. *Rojas v. Bosch Solar Energy Corp.*, 443 F. Supp. 3d 1060, 1073 (N.D. Cal. 2020).

[3] Even to the extent that California law is held to apply to this claim, the elements of a fraudulent inducement claim are substantially similar under California law, and the claim should still be dismissed for the reasons set forth herein. *See, e.g., In re Winick*, 610 B.R. 651, 659 (S.D. Cal. 2019).

made unidentified misrepresentations about their intent at unidentified times over a five-month period. Instead, Cleanview is required to identify what *each* defendant said, when he said it, and where it was said. *Elworthy v. First Tenn.Bank*, 2017 WY 33, ¶ 44, 391 P.3d 1113, 1126 (Wyo. 2017). It has not done so.

The only specific allegation of a purported misrepresentation made by any of the defendants concerns an alleged statement by Peyton Palaio. (Compl. ¶ 60). However, Cleanview fails to allege *when* this alleged statement was made, to whom it was made, how it was made, or where it was made. Such allegations are critical because if, for example, such representation allegedly was made in May of 2021 (as alleged in paragraph 59 of the Complaint), it cannot form the basis for a fraudulent inducement claim of a contract entered into months prior. *Schepps*, 665 P.2d at 509.

Further, it is not enough for Cleanview to conclusorily allege that LGI never intended to perform. "Accepting this type of conclusory allegation as sufficient to state a fraudulent inducement claim would 'potentially turn every breach of contract claim into one of fraud as well, so long as the plaintiff adds to his complaint a general allegation that the defendant never intended to keep [its] promise.'" *U.S. Bank, N.A. for Registered Holders of ML-CFC Com. Mortg. Tr. 2007-7 v. Miller*, No. CV 12-05632, 2013 WL 12183654, at *8 (C.D. Cal. Sept. 19, 2013) (citation omitted). And even accepting as true an allegation that a contract was later breached, such allegation does not sufficiently support an allegation that party *never* intended to honor the contract. *Smith v. Allstate Ins. Co.*, 160 F. Supp. 2d 1150, 1153–54 (S.D. Cal. 2001).

Indeed, the core of Cleanview's allegations are alleged "upon information and belief," (*see, e.g.,* Compl., ¶ 57), and "allegations of fraud upon information and belief typically do not satisfy Rule 9(b)'s heightened pleading requirements." *Tortilla Factory, LLC v. Health-Ade LLC*, No. CV-179090, 2018 WL 6174708, at *8 (C.D. Cal. July 13, 2018). "Although facts may be alleged upon information and belief, that does not mean that purely conclusory allegations are per se plausible." *Waln v. Dysart Sch. Dist.*, No. CV 20-00799, 2021 WL 1255521, at *7 (D. Ariz. Mar. 1, 2021). Such

allegations remain "insufficient under *Iqbal/Twombly*." *Id*.

Further, Cleanview has not adequately alleged reasonable reliance. The MOU is clear on its face that it is *not binding*, and therefore LGI has *no* obligation to proceed with a further transaction, unless and until LGI received, reviewed, and satisfactorily verified diligence materials and other information from Cleanview. (MOU at p. 3). The MOU further expressly sets forth that its purpose is simply "to outline the offering terms for" a potential acquisition which would be later memorialized in a "formal Purchase and Sale Agreement." (MOU at p. 1). Thus, Cleanview expressly acknowledged on the face of the MOU its understanding that the MOU was not binding unless and until, at a minimum, a number of conditions precedent were met. Cleanview has not even bothered to allege that these conditions precedent have been satisfied (because they have not), and thus has not sufficiently plead "reasonable reliance" as a matter of law.

### 2. Plaintiffs' Second Cause of Action Fails to State a Claim for Tortious Interference With Contractual Relationships.

The second cause of action, asserted by Cleanview against all defendants for tortious interference, also is governed by Wyoming law. As discussed above, the NDA contains a choice-of-law provision that, among other things, the parties' "performance" under the NDA "shall be governed by and construed in accordance with the laws of the State of WY . . . ." (NDA § 9.2). The core of Cleanview's claim is that it introduced defendants to certain of its contractual counterparties under the protection of the NDA, and that defendants thereafter improperly interfered with those contractual relationships. (Compl. ¶¶ 69-73). Thus, this claim relates to the parties' performance under the NDA within the meaning of the choice-of-law provision. *VFD Consulting, Inc. v. 21st Servs*., 425 F. Supp. 2d 1037, 1046–47 (N.D. Cal. 2006).

Under Wyoming law, the following elements must be alleged by a plaintiff seeking to assert a claim for tortious interference with a contract:

(1) The existence of a valid contractual relationship or business expectancy; (2) knowledge of the relationship or expectancy on the part of the interferer; (3) intentional and improper interference inducing or causing

McKool Smith Hennigan, P.C.
Los Angeles, CA

a breach or termination of the relationship or expectancy; and (4) resultant damage to the party whose relationship or expectancy has been disrupted.

*Gore v. Sherard*, 2002 WY 114, ¶ 13, 50 P.3d 705, 710 (Wyo. 2002).[4]

With respect to the first element, Cleanview fails to allege the existence of contracts with any entity other than Indobotanical. (*See* Compl., ¶ 69). In order to plead the existence of a valid contractual relationship, Cleanview must identify, at a minimum, the identity of its contractual counterparty. Cleanview's vague allegations that it has "developed contacts and contractual relationship with kratom farmers, distributors, and suppliers in Indonesia, including Indobotanical" (*Id.* ¶69) "does not satisfy the notice pleading requirement to give a defendant fair notice of what the claim is about." *Bextel v. Hancock, III*, No. 17742, 2019 WL 12021816, at *7 (Wyo. Dist. May 17, 2019). It is not sufficient for Cleanview to allege, as it has, nothing more than a generalized interference with its business. *Id*.

Cleanview also has failed to sufficiently allege the third required element of the cause of action because the Complaint contains *no* allegations that any alleged interference by defendants caused a "breach or termination of" Cleanview's relationships with its contractual counterparties. This alone is fatal to Cleanview's claim. *Gore*, 2002 WY 114, ¶ 13.

Further, Cleanview's suggestion that defendants' interactions with "kratom farmers, distributors, and suppliers" in Indonesia was somehow improper is belied by the very face of the parties' agreements. (Compl. ¶ 69). The MOU expressly recognizes that any acquisition of Cleanview by LGI would be contingent on LGI's verification of Cleanview's representations concerning its supply chain in Indonesia. (MOU at pp. 2-3). Moreover, the ESA expressly authorized, and indeed required Plaintiffs to permit, LGI to directly communicate with and oversee Cleanview's

---

[4] Once again, even to the extent California law is held to apply to this claim, the elements for a tortious interference claim under California law are substantially the same as the elements under Wyoming law, and the claim should still be dismissed for all of the reasons set forth herein. *See, e.g., Name.Space, Inc. v. Internet Corp. for Assigned Names & Numbers*, 795 F.3d 1124, 1133 (9th Cir. 2015).

farmers, suppliers, and distributors in Indonesia. (*See, e.g.,* ESA, at §§ 1(a)(ix), 1(b)(iii)). The Court need not accept Cleanview's threadbare allegations mirroring the legal elements of a claim for tortious interference (*see, e.g.,* Compl. ¶ 72) when the actual factual allegations are themselves insufficient as a matter of law and contrary to the very documents attached to the Complaint. *See, e.g., Marquez v. Toll Global Forwarding (USA), Inc.*, No.02667, 2021WL 2808691, *2 (C.D. Cal. Jul. 06, 2021).

Finally, Cleanview has failed to identify any alleged damage, beyond the mere conclusory statement that damage occurred. *Bextel v. Hancock, III*, 2019 WL 12021816, at *7.

### 3. Plaintiffs' Third Cause of Action Fails to State a Claim for Breach of the MOU and NDA.

The Complaint's third cause of action attempts, but fails, to plead a claim by Cleanview against LGI for breaches of the MOU and NDA. As a result of the choice-of-law provision in the NDA, this claim is subject to Wyoming law. Under Wyoming law, "[t]he elements for a breach of contract claim consist of a lawfully enforceable contract, an unjustified failure to timely perform all or any part of what is promised therein, and entitlement of injured party to damages." *Schlinger v. McGhee*, 2012 WY 7, ¶ 12, 268 P.3d 264, 268 (Wyo. 2012), *as amended on reh'g* (Feb. 7, 2012) (citation omitted).[5] Cleanview has not adequately pleaded these elements with respect to the MOU. <u>First</u>, and as described above, the MOU is clear on its face that it is *not binding* unless and until a number of contingencies are met. (MOU at p. 1, 3). Cleanview has not, and indeed cannot, plead satisfaction of these contingencies. <u>Second</u>, the only manner in which Cleanview alleges LGI breached the MOU is by "[f]ailing to pay outstanding invoices due to Indobotanical and other vendors, as required by the MOU." (Compl. ¶ 79(iii)). But Cleanview has not pleaded that the MOU even obliges

---

[5] Even to the extent this claim is subject to California law, the elements of a breach of contract claim are substantially the same under California law as they are under Wyoming law, and therefore, the claim should still be dismissed for the reasons set forth herein. *See, e.g., Bella Canvas, LLC v. TSC Apparel, LLC*, No. 20-cv-05947, 2020 WL 7048306, at *2 (C.D. Cal. Sept. 17, 2020).

McKool Smith Hennigan, P.C.
Los Angeles, CA

1   LGI to pay any such invoices, and even a cursory review of the MOU reveals that it in

2   fact contains no such provision. Accordingly, Cleanview has failed to adequately

3   allege a breach of the MOU.

4       Nor has Cleanview alleged a breach of the NDA. Cleanview's two allegations

5   regarding breach of the NDA are that LGI (1) "actively engag[ed] and cultivat[ed]

6   relationships with local Indonesian individuals and entities that are part of the

7   Cleanview's [sic] supply chain, including Indobotanical, that Cleanview introduced to

8   defendants under the protection of the NDA"; and (2) "engage[d] in lobbying

9   Indonesian government officials through the contact that Cleanview introduced to

10  defendants under the protection of the NDA." (Compl. ¶ 79(i)-(ii)). As to the former

11  allegation, both the MOU and ESA expressly authorize LGI to verify Cleanview's

12  representations concerning its supply chain in Indonesia, and to communicate directly

13  with and oversee the Indonesian farmers, providers, and distributors working with

14  Cleanview. (MOU at p. 2-3; ESA §§ 1(a)(ix); 1(b)(3iii)). Thus, Cleanview's allegation

15  of "breach" is contradicted by the documents attached to Cleanview's complaint. *In re*

16  *Am. Apparel, Inc. S'holder Litig.*, 855 F. Supp. 2d at 1060.

17      As to the latter allegation, even assuming it were true (and it is not), Cleanview

18  has failed to identify any provision of the NDA that is violated by LGI meeting with

19  government officials. This is because none exists. Nor has Cleanview alleged how it

20  was (or even remotely could have been) damaged by LGI meeting with such officials.

21  Accordingly, Cleanview has failed to state a claim for breach of the MOU or NDA.

22      **4.**    **Plaintiffs' Fourth Cause of Action Fails to State a Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing Inherent in the MOU/NDA.**

23  

24      The Complaint's fourth cause of action attempts to plead a claim by Cleanview

25  against LGI for breach of the covenant of good faith and fair dealing implied in the

26  MOU and NDA. This claim is also subject to the Wyoming choice-of-law provision in

27  the NDA. *See Dos Beaches, LLC v. Mail Boxes Etc., Inc.*, No. 09-cv-2401, 2012 WL

28  506072, at *19 (S.D. Cal. Feb. 15, 2012). Cleanview fails to state a claim as a matter

of law because, as discussed above, the MOU is not a binding contract. (*See* Section IV.C.1, *supra*). Under Wyoming law, a claim for breach of the implied covenant of good faith cannot stand in the absence of a binding contract. *Birt v. Wells Fargo Home Mortg., Inc.*, 2003 WY 102, ¶ 21, 75 P.3d 640, 650 (Wyo. 2003).

Moreover, Cleanview's fourth cause of action pleads nothing more than insufficient boilerplate allegations that LGI "fail[ed] to act fairly, honestly, and cooperatively with Cleanview and [sought] to deprive Cleanview of the benefits of the MOU and NDA." (Compl. ¶ 85). *Marquez*, 2021 WL 2808691, at *2. Beyond these boilerplate allegations, Cleanview's claim relies upon the very same allegations as its companion breach of contract claim – *i.e.*, that LGI allegedly wrongfully used Cleanview's confidential information in breach of the NDA. (*See, e.g.,* Compl. ¶¶ 82-87). But Cleanview cannot re-cast its breach of contract claim as one for a breach of the implied duty of good faith and fair dealing. *See, e.g., Yi v. Circle K Stores, Inc.*, 258 F. Supp. 3d 1075, 1086 (C.D. Cal. 2017), *aff'd*, 747 F. App'x 643 (9th Cir. 2019).

And as discussed above, both the MOU and ESA expressly authorize LGI to verify Cleanview's representations concerning its supply chain in Indonesia, and to communicate directly with Indonesian farmers. (MOU at p. 2-3; ESA §§ 1(a)(ix), 1(b)(iii)). "Under Wyoming law, a claim for breach of the implied covenant of good faith and fair dealing cannot exist where a party is simply exercising those rights that they are contractually entitled to exercise." *Bear Peak Res., LLC v. Peak Powder River Res., LLC*, 2017 WY 124, ¶ 69, 403 P.3d 1033, 1054 (Wyo. 2017). Thus, LGI's exercise of its contractual rights to, for example, "engage[] with local Indonesian individuals and entities that are part of Cleanview's supply chain" (Compl. ¶ 49) cannot form the basis for a claim for breach of an implied covenant of good faith.

Cleanview also fails to allege any facts demonstrating that LGI failed to act in "good faith." "Good faith means 'faithfulness to an agreed common purpose and consistency with the justified expectations of the other party; it excludes a variety of types of conduct characterized as involving 'bad faith' because they violate

community *standards of decency, fairness or reasonableness.*'" *Wilder v. Cody Cnty. Chamber of Com.*, 1994 WY 7, ¶38, 868 P.2d 211, 220 (Wyo. 1994). As noted, the contract itself reflects that both parties understood and expected that LGI would be permitted to "engage with" Cleanview's farmers, suppliers, and distributers. And certainly the Complaint does not allege facts required to plead that LGI violated community standards of decency, fairness, or reasonableness by doing so.

### 5. Plaintiffs' Fifth Cause of Action Fails to State a Claim for Breach of the ESA.

The Complaint's fifth cause of action purports to be brought by Smash Hit and Green Gold for breach of the ESA. Unlike the MOU/NDA, the ESA does not contain a choice-of-law provision, and thus for purposes of this motion, LGI applies California law to this cause of action. "Under California law, the elements of a breach of contract claim are (1) the existence of a valid contract; (2) plaintiff's performance or excuse for nonperformance; (3) defendant's breach; and (4) resulting damage to the plaintiff." *Bella Canvas, LLC v. TSC Apparel, LLC*, No. 20-cv-05947, 2020 WL 7048306, at *2 (C.D. Cal. Sept. 17, 2020).

Plaintiffs fail to sufficiently allege breach. The Complaint asserts that Alphabet breached the ESA by: "(i) using other suppliers for Alphabet's use in the United States; (ii) [f]ailing to purchase the minimum requirements set forth in the [ESA]; and (iii) [f]ailing to pay outstanding invoices." (Compl. ¶ 91). The first of these allegations is belied by the terms of the ESA. The ESA is "exclusive on the part of the Partner" only. (ESA § 4; *see also* § 1(a)(viii)). It contains *no* requirement of exclusivity on the part of Alphabet. That Alphabet is entitled to "enter into similar arrangements with parties outside of USA [sic]" does not imply a prohibition against Alphabet entering into similar arrangements with parties *inside* the USA. (*Id.* at § 4).

In any event, the Complaint lacks any actual *factual* allegations concerning Alphabet's purported breach, but instead recites formulaic legal conclusions. *Marquez*, 2021 WL 2808691, at *2. After recounting provisions of the ESA, the

Complaint summarily concludes that Alphabet breached them. (Compl. ¶¶ 88-93). But it contains *no* actual factual allegations supporting those conclusions. Such "threadbare" allegations are insufficient. *See, e.g. Payne v. Cal.Dep't of Corr. & Rehab.*, No. CV 15-2815-PA (SP), 2017 WL 10560641, at *5 (C.D. Cal. Sept. 27, 2017). Accordingly, the fourth cause of action should be dismissed.

### 6. Plaintiffs' Sixth Cause of Action Fails to State a Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing Inherent in the ESA.

The Complaint's sixth cause of action is asserted by Smash Hit and Green Gold for breach of the covenant of good faith and fair dealing implied in the ESA. Smash Hit and Green Gold allege that LGI breached this implied covenant in several ways: (1) by "delivering improper notices of defect, when, among other things, the parties never agreed upon any testing or specifications"; (2) by "using improper testing"; and (3) by "failing to permit Smash Hit and Green Gold's own inspection of the purportedly defective product." (Compl. ¶ 97).

As to the first two allegations, the ESA itself expressly authorizes LGI to test incoming shipments, and to notify Green Gold and Smash Hit of rejected shipments that do not pass "incoming material testing and specifications." (ESA §§ 1(a)(vi), 1(b)(ii)). LGI's exercise of these contractual rights cannot, as a matter of law, form the basis for a claim for breach of the implied covenant of good faith and fair dealing. *See Bevis v. Terrace View Partners, LP*, 33 Cal. App. 5th 230, 252–53 (2019). While Plaintiffs may *disagree* with the notices of defect, that does not mean LGI breached the implied duty of good faith by exercising its contractual right to send them.

Plaintiffs' third allegation that LGI failed to "permit Smash Hit and Green Gold's own inspection of the purportedly defective product" actually alleges that LGI breached its obligation to return rejected material to Smash Hit and Green Gold. (ESA § 1(a)(vi)). But a claim for a breach of the implied covenant of good faith must involve "something beyond a breach of [a] contractual duty itself." *See, e.g., Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*, 222 Cal. App. 3d 1371, 1394 (Ct. App. 1990).

McKool Smith Hennigan, P.C.
Los Angeles, CA

And in any event, the ESA expressly obligates Smash Hit/Green Gold to bear the expense of returning rejected material. (ESA § 1(a)(vi)). The ESA further obligates Smash Hit/Green Gold to replace the material within 24 hours of receipt of the notice of defect, regardless of whether the product has yet been returned. (*Id.*) Smash Hit and Green Gold have not alleged that they actually paid, or even offered to pay, the expenses of returning the defective material, nor that they timely replaced the defective material. It defies logic for Smash Hit/Green Gold to be heard to complain that LGI allegedly "fail[ed] to permit" them to inspect defective product when they themselves have not adhered to their own pre-requisite contractual obligation to pay for the return of the product, and replace it.

In any event, the Complaint fails to allege that by sending the defect notices, LGI acted in "bad faith." In this context, "[b]ad faith implies unfair dealing rather than mistaken judgment." *Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*, 222 Cal. App. 3d 1371, 1394, (1990), *as modified on denial of reh'g* (Oct. 31, 2001) (citation omitted). Even construed in the light most favorable to Plaintiffs, the Complaint alleges LGI's mere *mistaken judgment* in sending the defect notices rather than any course of *unfair dealing*. Accordingly, Plaintiffs have failed to state a claim for breach of the covenant of good faith and fair dealing implied in the ESA.

### 7. Plaintiffs' Seventh Cause of Action Fails to State a Claim for Unjust Enrichment.

The seventh cause of action is asserted by Cleanview for unjust enrichment. Regardless of whether Wyoming or California law applies, the claim cannot stand. Under both Wyoming and California law, a claim for unjust enrichment is unavailable where an express contract exists concerning the subject matter at issue. *Hunter v. Reece*, 2011 WY 97, ¶ 28, 253 P.3d 497, 504 (Wyo. 2011) (applying Wyoming law); *Cal. Med. Ass'n, Inc. v. Aetna U.S. Healthcare of Cal., Inc.*, 94 Cal. App. 4th 151, 172 (2001) (applying California law). Here, the unjust enrichment claim expressly relates to the parties' performance (or failure to perform) under the NDA and MOU and

therefore must be dismissed.

### 8. Plaintiffs' Eighth and Ninth Causes of Action Fails to State Claims for Declaratory Judgment.

Plaintiffs' eighth and ninth causes of action seek declarations that Plaintiffs did not breach the MOU and ESA. These claims are duplicative of the breach of contract claims pleaded in the Complaint's third and fifth causes of action. In order to succeed on their breach of contract claims, Plaintiffs must demonstrate that they performed under the contract or were excused from doing so (*i.e.*, that they themselves are not in breach of the contracts). (*See* §§ IV(C)(3), (5), *supra*). Determining these identical issues in the context of a declaratory judgment claim would be unnecessarily duplicative. *United Safeguard Distributors Ass'n, Inc. v. Safeguard Bus. Sys., Inc.*, 145 F. Supp. 3d 932, 961 (C.D. Cal. 2015).

### D. Plaintiffs' Claims Against "Alphabet Wholesale" Must Be Dismissed Because It is a Non-Entity Trade Name.

"Alphabet Wholesale Inc., Alphabet Wholesale LLC, and Alphabet Wholesale," are not separately existing entities affiliated with LGI "as part of larger [sic] web of companies." (Compl., ¶ 2). Instead, "Alphabet Wholesale" is a fictitious trade name utilized by defendant LGI Holdings LLC. (Palaio Decl., at ¶ 4). Non-entity trade names lack the capacity to be sued under Federal Rule of Civil Procedure 17(b). *See, e.g, Borisov v. Alamo Rent A Car*, No. C18-5847, 2019 WL 316710, at *3 (W.D. Wash. Jan. 24, 2019), *aff'd*, 796 F. App'x 949 (9th Cir. 2020).

Under Rule 17(b), the capacity to be sued is determined by state law. *Burger v. Kuimelis*, 325 F.Supp.2d 1026, 1033 (N.D. Cal. 2004). In California, a trade name is not legally separate from its owner, and therefore cannot be sued separately from the owner. *Pinkerton's, Inc. v. Superior Court*, 49 Cal.App.4th 1342, 1348 (1996).

Accordingly, "Alphabet Wholesale Inc., Alphabet Wholesale LLC, and Alphabet Wholesale, business form unknown" should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6). *See, e.g., Niantic, Inc. v. Global++*, No. 19-CV-03425-JST, 2019 WL 8333451, at *2 (N.D. Cal. Sept. 26, 2019).

All claims asserted in the Complaint by Cleanview (i.e., the first through fourth, seventh, and ninth causes of action) fall within the forum selection clause in the NDA providing that Wyoming state and federal courts will have "sole and exclusive jurisdiction over any disputes arising under, or in any way connected with or related to, the terms of this Agreement." (Compl., Ex. 2, at NDA § 9.2.) "When a mandatory forum selection clause clearly designates the forum chosen as the exclusive forum, it is enforceable." *Koresko v. RealNetworks, Inc.*, 291 F. Supp. 2d 1157, 1161 (E.D. Cal. 2003) (citing *N. Cal. Dist. Council of Laborers v. Pittsburg–Des Moines Steel Co.*, 69 F.3d 1034, 1037 (9th Cir.1995)).

The forum selection clause contained in the NDA is mandatory (rather than permissive). Cleanview expressly agreed that any controversies "arising out of" or "in any way connected with or related to" the NDA shall be *solely* and *exclusively* resolved in the federal or state courts in Wyoming. *See N. Cal. Dist. Council of Laborers,* 69 F.3d at 1037. Thus, because Cleanview's claims arise out of, are connected with, or relate to the NDA, they must be heard in Wyoming.

Cleanview's first cause of action (fraud-in-the-inducement) asserts that "Defendants made numerous false or misleading statements with the intent to induce Clearview [sic] to enter into the MOU and NDA." (*Id*. at ¶ 59). Cleanview asserts it was damaged "by the use and disclosure of its confidential information" provided under the NDA. (*Id.* at ¶ 64). This claim thus asserts a "dispute[] arising under, or in any way connected with or related to, the" NDA. (NDA § 9.2).

Cleanview's second cause of action (tortious interference with contractual relationships) alleges that Cleanview introduced defendants to "critical persons and entities" in its supply chain pursuant to and under the protection of the NDA, and that defendants intentionally interfered with those relationships. (Compl. ¶¶ 69-73). Given Cleanview's allegations that these introductions were only made "pursuant to the

1  NDA," this claim too is "connected with or related to" the NDA. (NDA § 9.2).

2      Cleanview's third, fourth, and ninth causes of action allege breaches of the

3  MOU and NDA, breaches of the implied covenant of good faith and fair dealing

4  inherent in the MOU and NDA, and seek a declaration that Cleanview has not

5  breached the MOU. (Compl. ¶¶ 76-87, 109-111). Accordingly, each of these claims is

6  encompassed within the forum-selection clause too.

7      Lastly, Plaintiffs' seventh cause of action for unjust enrichment expressly

8  alleges that "Defendants have benefitted from . . . utilizing Cleanview's confidential

9  information obtained under the NDA." (*Id.* at 101). Accordingly, this claim too "arises

10  out of" and is "connected with" the NDA.

11      Thus, to the extent that they are not otherwise dismissed, the first through

12  fourth, seventh, and ninth causes of action should be transferred to the District of

13  Wyoming pursuant to 28 U.S.C. § 1404(a) due to the NDA's forum-selection clause.

14      Additionally, the remaining claims in the Complaint should also be transferred

15  to the District of Wyoming in the interest of justice and for the convenience of the

16  parties and witnesses. *Henson v. Fid. Nat. Fin., Inc.*, No. 1:13-CV-01452-AWI, 2014

17  WL 641978, at *8–14 (E.D. Cal. Feb. 18, 2014) (transferring co-plaintiff Henson's

18  claims to different district in the interest of justice and judicial economy pursuant to

19  28 USC § 1404(a) where co-plaintiff Turner's claims were required to be transferred

20  to that same district pursuant to 28 USC § 1406(a)).[6]

21  **V.    CONCLUSION**

22      For the reasons set forth above, LGI respectfully requests that the Court dismiss

23  Plaintiffs' complaint in its entirety with prejudice. In the alternative, LGI respectfully

24  requests that the Court transfer this action the United States District Court for the

25  District of Wyoming pursuant to 28 U.S.C. §§ 1404(a) and/or 1406(a).

26  ───────────────

27  [6] LGI need not demonstrate that the District of Wyoming has personal jurisdiction
over *all* the defendants insofar as transfer is in the interest of justice and the
complaint fails to allege any basis for liability against the individual defendants who

28  have not been served. *Zaklit v. Glob. Linguist Sols., LLC*, No. Civ. 1308654, 2014
WL 12521725, at *11-12 (C.D. Cal. Mar. 24, 2014).

DATED: October 14, 2021

Respectfully submitted,

MCKOOL SMITH HENNIGAN, P.C.


BY: _/s/_ M. STORM BYRD

KIRK D. DILLMAN
M. STORM BYRD

JEFFREY MUELLER (admitted *pro hac vice*)
jmueller@daypitney.com
GREGORY BRUNO (admitted *pro hac vice*)
gbruno@daypitney.com
DAY PITNEY LLP
605 Third Avenue, 31st Floor
New York, New York 10158
Telephone: (212) 297-5800
Facsimile: (212) 916-2940

*Counsel for LGI Holdings LLC d/b/a Alphabet Wholesale*