Marianne K. Shanor (Wyo. Bar #7-4841)
Sean M. Larson (Wyo. Bar #7-5112)
Hathaway & Kunz, LLP
2515 Warren Avenue, Suite 500
Cheyenne, WY 82003
Phone: (307) 634-7723
mshanor@hkwyolaw.com
slarson@hkwyolaw.com

Jeffrey P. Mueller (*pro hac vice* application forthcoming)
Adam K. Grant (*pro hac vice* application forthcoming)
Gregory R. Bruno (*pro hac vice* application forthcoming)
Day Pitney LLP
605 Third Avenue, 31st Floor
New York, New York 10158
Phone: (212) 297-5800
jmueller@daypitney.com
agrant@daypitney.com
gbruno@daypitney.com

*Counsel for Defendant LGI Holdings LLC*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF WYOMING

| | | |
|---|---|---|
| CLEANVIEW DISTRIBUTION GROUP LLC, a Wyoming limited liability company; SMASH HIT TRADING LLC, a Wyoming limited liability company; and GREEN GOLD ICE LLC, a Wyoming limited liability company, | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action No. 0:21-CV-00208 |
| LGI HOLDINGS, LLC, dba Alphabet Wholesale, a Wyoming limited liability company, | ) ) ) ) | |
| Defendant. | ) ) | |

## DEFENDANT LGI HOLDINGS LLC'S BRIEF
## IN SUPPORT OF MOTION TO DISMISS

# TABLE OF CONTENTS

I.     INTRODUCTION ................................................................................................. 1

II.    NATURE OF THE CASE AND PROCEDURAL POSTURE ................................... 2

    A.    The Exclusive Supply Agreement ................................................................. 2

    B.    The MOU and NDA ..................................................................................... 3

    C.    The Alleged Dispute .................................................................................... 4

    D.    Procedural Posture ....................................................................................... 5

III.    LEGAL STANDARD ........................................................................................... 6

IV.    ARGUMENT ........................................................................................................ 7

    A.    Plaintiffs' First Cause of Action Fails to State a Claim for Fraud-in-the-Inducement ....... 7

        1.    Plaintiffs Fail to Plead Any Alleged Misrepresentations with Sufficient Particularity ...... 7

        2.    Plaintiffs Allege Broken Promises, Not Actionable Misrepresentations ............... 9

        3.    Plaintiffs Fail to Allege Reasonable Reliance ................................... 11

    B.    Plaintiffs' Second Cause of Action Fails to State a Claim for Tortious Interference with Contract ....... 13

        1.    Wyoming Courts Would Recognize the Competitor's Privilege ......................... 13

        2.    Plaintiffs Fail to Allege Facts Overcoming the Competitor's Privilege ............. 15

    C.    Plaintiffs' Fourth and Sixth Causes of Action Fail to State a Claim for Breach of the Covenant of Good Faith and Fair Dealing. ....... 18

        1.    Plaintiffs Offer Only Conclusory Allegations that LGI Breached the Covenant of Good Faith and Fair Dealing Implied in the MOU and NDA ............ 19

        2.    Plaintiffs' Good Faith Fair Dealing Claim Is Inconsistent with the ESA ............ 19

    D.    Plaintiffs' Seventh Cause of Action Fails to State a Claim for Unjust Enrichment ......... 21

    E.    Plaintiffs' Declaratory Judgment Claims Should Be Dismissed ....................... 22

    F.    Plaintiffs' Punitive Damages Claim Must Be Dismissed ................................ 23

V.    CONCLUSION ................................................................................................... 24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Adoption of Hiatt*,
　69 Wyo. 373, 242 P.2d 214 (Wyo. 1952) .................................................................8

*Allen v. Safeway Stores Inc.*,
　699 P.2d 277 (Wyo. 1985) ....................................................................................17

*Anapoell v. Am. Express Bus. Fin. Corp.*,
　No. 08-cv-4114, 2009 WL 766532 (10th Cir. Mar. 24, 2009) .............................19

*Angell v. Freedom Mortg. Corp.*,
　No. 16-cv-0192, 2016 WL 9453335 (D. Wyo. Sept. 8, 2016)................................2

*Bear Peak Res., LLC v. Peak Powder River Res., LLC*,
　2017 WY 124, 403 P.3d 1033 (Wyo. 2017) .......................................18, 19, 20, 21

*Bitker v. First Nat'l Bank in Evanston*,
　2004 WY 114, 98 P.3d 853 (Wyo. 2004) .............................................................11

*Breen v. Pruter*,
　No. 14-cv-00081, 2015 WL 6163439 (D. Wyo. Aug. 6, 2015),
　*aff'd*, 679 F. App'x 713 (10th Cir. 2017).................................................................7

*Cleary v. Wind Quarry, LLC*,
　No. 15-cv-189, 2016 WL 10518596 (D. Wyo. Jan. 29, 2016) ...........................9, 10

*Commonwealth Prop. Advocs., LLC v. Mortg. Elec. Registration Sys., Inc.*,
　680 F.3d 1194 (10th Cir. 2011) ........................................................................11, 20

*Della Penna v. Toyota Motor Sales, U.S.A.*,
　902 P.2d 740 (Cal. 1995) ......................................................................................16

*Downs v. Homax Oil Sales, Inc.*,
　2018 WY 71, 421 P.3d 518 (Wyo. 2018) .............................................................13

*DP-Tek, Inc. v. AT & T Glob. Info. Sols. Co.*,
　100 F.3d 828 (10th Cir. 1996) ..........................................................................14, 17

*Eller v. Nat'l Football League Players Ass'n*,
　731 F.3d 752 (8th Cir. 2013) .................................................................................16

*Elworthy v. First Tenn. Bank*,
　2017 WY 33, 391 P.3d 1113 (Wyo. 2017) ...........................................................7, 9

*United States ex rel. Farmers Home Admin. v. Redland,*
 695 P.2d 1031 (Wyo. 1985) ............................................................................................24

*First Wyo. Bank, Casper v. Mudge,*
 748 P.2d 713 (Wyo. 1988) ...........................................................................................13, 14

*Franklin D. Azar & Assocs., P.C. v. Egan,*
 787 F. App'x 528 (10th Cir. 2019) ...................................................................................14

*Franklin Life Ins. Co. v. Johnson,*
 157 F.2d 653 (10th Cir. 1946) .........................................................................................23

*Free Speech v. Fed. Election Comm'n,*
 No. 12-cv-127, 2013 WL 12142583 (D. Wyo. Mar. 19, 2013),
 *aff'd,* 720 F.3d 788 (10th Cir. 2013) ..................................................................................6

*Gamble v. Overton,*
 No. 05-cv-192, 2007 WL 9707043 (D. Wyo. Nov. 8, 2007)....................................8, 9, 11, 23

*Garner v. Hickman,*
 709 P.2d 407 (Wyo. 1985) .................................................................................................8

*Halling v. Yovanovich,*
 2017 WY 28, 391 P.3d 611 (Wyo. 2017) ...........................................................................22

*Harper v. Fidelity & Guar. Life Ins. Co.,*
 2010 WY 89, 234 P.3d 1211 (Wyo. 2010) .........................................................................19

*Int'l Sales & Serv., Inc. v. Austral Insulated Prods., Inc.,*
 262 F.3d 1152 (11th Cir. 2001) ........................................................................................17

*Iqbal. Mckinney v. Granite Peak Fabrication, LLC,*
 No. 19-cv-00266, 2020 WL 10356870 (D. Wyo. Mar. 13, 2020) .........................................24

*Johnson v. Soulis,*
 542 P.2d 867 (Wyo. 1975) ...........................................................................................10, 11

*Koch v. Koch Indus., Inc.,*
 203 F.3d 1202 (10th Cir. 2000) ......................................................................................8, 9

*United States ex rel. Lacy v. New Horizons, Inc.,*
 348 F. App'x 421 (10th Cir.2009) ......................................................................................8

*Maverick Benefit Advisors, LLC v. Bostrom,*
 2016 WY 96, 382 P.3d 753 (Wyo. 2016) ...........................................................................22

*Mincin v. Vail Holdings, Inc.,*
 308 F.3d 1105 (10th Cir. 2002) .........................................................................................7

*Morrow v. Xanterra Parks & Resorts,*
No. 12-cv-141, 2012 WL 13065593 (D. Wyo. Oct. 22, 2012) ................................6

*Occusafe, Inc. v. EG&G Rocky Flats, Inc.,*
54 F.3d 618 (10th Cir. 1995) ........................................................................14, 16

*Rogers v. Wright,*
2016 WY 10, 366 P.3d 1264 (Wyo. 2016) ...............................................................8

*Rohr v. Allstate Fin. Servs.,*
529 F. App'x 936 (10th Cir. 2013)........................................................................11

*Royal Typewriter Co. v. Xerographic Supplies Corp.,*
719 F.2d 1092 (11th Cir. 1983) ............................................................................18

*Safeway Stores 46, Inc. v. Wy Plaza, L.C.,*
No. 19-cv-143, 2020 WL 6688606 (D. Wyo. Oct. 20, 2020)...........................21, 22

*Schepps v. Howe,*
665 P.2d 504 (Wyo. 1983) ......................................................................................8

*Scherer Constr., LLC v. Hedquist Constr., Inc.,*
2001 WY 23, 18 P.3d 645 (Wyo. 2001) .................................................................20

*Sinclair Wyo. Refin. Co. v. A & B Builders, Ltd.,*
989 F.3d 747 (10th Cir. 2021) ..............................................................................18

*Speakers of Sport, Inc. v. ProServ, Inc.,*
178 F.3d 862 (7th Cir. 1999) ................................................................................14

*Stone v. Simone,*
No. 13-cv-00126, 2014 WL 11357747 (D. Wyo. July 7, 2014),
*aff'd,* 610 F. App'x 751 (10th Cir. 2015).........................................................6, 19

*Toltec Watershed Imp. Dist. v. Johnston,*
717 P.2d 808 (Wyo. 1986) ....................................................................................13

*Twing v. Schott,*
80 Wyo. 100, 338 P.2d 839 (1959) ......................................................................10

*U.S. Bank, N.A. ex rel. Registered Holders of ML-CFC Com. Mortg. Tr. 2007-7 v. Miller,* No.
12-cv-05632, 2013 WL 12183654 (C.D. Cal. Sept. 19, 2013) ...............................11

*U.S. Aviation Underwriters, Inc. v. Dassault Aviation,*
505 F. Supp. 2d 1252 (D. Wyo. 2007)..................................................................23

*Util. Trailer Sales of Kansas City, Inc. v. MAC Trailer Mfg., Inc.,*
443 F. App'x 337 (10th Cir. 2011).................................................................15, 17

*White v. Shane Edeburn Constr., LLC,*
  2012 WY 118, 285 P.3d 949 (Wyo. 2012) ...............................................................8

*Wilder v. Cody Cnty. Chamber of Com.,*
  868 P.2d 211 (Wyo. 1994) .............................................................................20, 21

*Woodard v. Stryker Corp.,*
  No. 11-cv-36, 2011 WL 13112108 (D. Wyo. Apr. 13, 2011) ...........................8, 11

*Zimmer Spine, Inc. v. EBI, LLC,*
  No. 10-cv-03112, 2011 WL 4089535 (D. Colo. Sept. 14, 2011).........................16

**Statutes**

Declaratory Judgment Act, 28 U.S.C. § 2201..............................................................23

**Rules**

Fed. R. Civ. P. 9...........................................................................................................7

Fed. R. Civ. P. 12.........................................................................................................1

**Other Authorities**

Restatement (Second) of Torts § 767, cmt. b.........................................................14, 16

Restatement (Second) of Torts § 768......................................................................14, 17

Defendant LGI Holdings, LLC (d/b/a Alphabet Wholesale) ("LGI") respectfully submits this brief in support of its motion to dismiss Counts I, II, IV, VI, VII, VIII, and IX and the prayer for punitive damages in the First Amended Complaint ("Amended Complaint") filed by Plaintiffs Cleanview Distribution Group, Smash Hit Trading LLC, and Green Gold Ice LLC (collectively "Plaintiffs") pursuant to Federal Rule of Civil Procedure ("FRCP") 12(b)(6) (the "Motion").[1]

## I.    INTRODUCTION

In the Amended Complaint, Plaintiffs seek to convert garden-variety contract claims into various defective claims in an attempt to seek additional damages and impose burdensome and expensive discovery on LGI.[2]  The Court should dismiss these insufficiently pled claims, reject Plaintiffs' attempts to expand this case, and focus this case on the actual causes of action at issue.

*First*, Plaintiffs' fraud in the inducement claim (Count I) not only fails to adequately plead *any* specific actionable misrepresentations of present fact allegedly made by LGI or its representatives with the particularity required by FRCP 9(b), but also fails to adequately plead that Plaintiffs reasonably relied on any such misrepresentations.

*Second*, Plaintiffs' tortious interference claim (Count II) fails to plead the facts necessary to overcome the competitor's privilege as Plaintiffs neither allege that LGI induced the breach of any contract between Plaintiffs and a third party, nor allege that LGI used "wrongful means" (such as independently tortious or criminal conduct) to do so.

*Third*, Plaintiffs' breach of the implied covenant of good faith and fair dealing claims

---

[1] Although the First Amended Complaint names other defendants as parties, they have been severed from this case by order of the United States District Court for the Central District of California.  (ECF No. 59.)

[2] Based on the discovery Plaintiffs already served in this action (constituting over 60 requests for production and 12 interrogatories), Plaintiffs are using these legally invalid claims to seek time-consuming, expensive, and ultimately unnecessary discovery.

(Counts IV and VI) fails to allege any concrete *facts* showing that LGI acted in bad faith conduct inconsistent with the performance of the contracts at issue.

**Fourth**, Plaintiffs' unjust enrichment claim (Count VII) should be dismissed because Plaintiffs plead that express contracts exist concerning the subject matter at issue.

**Fifth**, Plaintiffs' declaratory judgment claims (Counts VII and IX) are unnecessarily duplicative of their breach of contract claims, are excessively vague, and are not actually declaratory in nature.

**Sixth**, Plaintiffs fails to plead facts necessary to sustain a punitive damages claim.

## II.  NATURE OF THE CASE AND PROCEDURAL POSTURE[3]

Plaintiffs are Wyoming LLCs in the business of "import[ing] and distribut[ing] kratom (mitragyna speciose), a plant indigenous to Southeast Asia that may be processed for various uses, including fertilizer or in the alternative, holistic supplements." (Am. Compl., ECF No. 50, ¶ 1, 6-8, 23.)  LGI (d/b/a "Alphabet Wholesale") is also a Wyoming LLC.  (*Id.* at ¶ 9.)  LGI and its affiliates are allegedly "the largest kratom business in the United States."  (Am. Compl. ¶¶ 2, 28.)

### A.  The Exclusive Supply Agreement

The Amended Complaint alleges that in "approximately April 2020," LGI inquired about purchasing kratom from Plaintiffs. (Am. Compl. ¶ 24.) After some initial discussions, LGI ultimately allegedly placed "20 orders" for kratom with Plaintiffs "between April 2020 and early October 2020."  (*Id.* at ¶¶ 24-26) This informal business relationship eventually resulted in a formal

---

[3] Unless otherwise noted, the "facts" as outlined in this section are drawn from the allegations contained in the Amended Complaint. *See Angell v. Freedom Mortg. Corp.*, No. 16-cv-0192, 2016 WL 9453335, at *1 (D. Wyo. Sept. 8, 2016) (noting that "[i]n reviewing a motion to dismiss under Rule 12(b)(6), this Court must accept as true all well-pleaded factual allegations in a complaint and view these allegations in the light most favorable to the plaintiff" (quotation marks omitted)).

exclusive supply arrangement wherein Plaintiffs agreed to supply kratom exclusively to LGI.

Specifically, "on or about October 26, 2020, [LGI], and Smash Hit and Green Gold entered into an Exclusive Supply Agreement" ("ESA"). (Am. Compl. ¶ 31.) Pursuant to the ESA, Smash Hit, Green Gold, and "any of their partners, affiliates, owners or subsidiaries" (defined in the ESA as the "Partner") were to "maintain an exclusive relationship to [LGI] and not solicit or sell kratom (mitragyna speciose) to other buyers." (ESA, ECF No. 50-1, at p. 1 (first recital); §§ 1(a)(viii), 4.) The ESA provides contractual protections for LGI against the Partner supplying defective material by requiring the Partner to "immediately replace any material supplied that does not pass incoming testing and specifications" plus "an additional 25%" which is to be "sent out within 24 hours of receiving notice of rejection." (ESA § 1(a)(vi).) After the execution of the ESA, Plaintiffs allege that LGI continued to place kratom orders with Plaintiffs. (Am. Compl. ¶¶ 26, 37.)

### B.    The MOU and NDA

The Amended Complaint alleges that in January 2021, "Peyton Palaio proposed acquiring the Cleanview Companies' business." (Am. Compl. ¶ 40.) Plaintiffs allege that on January 11, 2021, Peyton Palaio and Lawrence Larsen "had a phone call with" Cleanview's representative, John Thomas Bryant, wherein Peyton Palaio "expressed interest in acquiring the Cleanview Companies" to "achieve . . . control" over the "traceability" of kratom "from a farm through the whole supply, manufacturing, and distribution chain." (*Id*.)

After further discussions, which included an introductory Microsoft Teams meeting on January 28, 2020 (Am. Compl. ¶ 41), as well as "a series of text messages, telephone calls, and zoom calls" with "Bryant located in California" (*id*. at ¶ 42), Cleanview and LGI entered in[to] a Memorandum of Understanding (the "MOU") (*id*. ¶ 47).

The MOU's express "purpose" is to "outline the offering terms for" LGI's "opportunity to acquire ownership in" Cleanview, and its terms anticipate the negotiation of a further "formal

Purchase and Sale Agreement ('PSA')." (MOU, ECF No. 50-2, at p. 1.)  The MOU sets forth contingencies that must be met in the formal PSA, as well as additional contingencies that must be met before the MOU itself even becomes a "binding commitment."  (*Id*. at p. 2-3.)

"The MOU incorporated as Exhibit A, a Confidentiality and Non-Disclosure Agreement (the 'NDA')."  (Am. Compl. ¶ 48.)  Lisa Wong, the sole member of each of the Plaintiffs (Am. Compl. ¶ 20), allegedly executed the MOU and NDA in California.  (*Id*. at 48.).  The NDA contains a choice-of-law and exclusive jurisdiction clause that provides:

> The validity, construction and performance of this Agreement shall be governed and construed in accordance with the laws of the State of WY applicable to contracts made and to be wholly performed within such state, without giving effect to any conflict of laws provisions thereof.  The Federal and state courts located in the State of WY shall have sole and exclusive jurisdiction over any disputes arising under, or in any way connected with or related to, the terms of this Agreement.

(NDA, ECF No. 50-2, § 9.2.)

## C.    The Alleged Dispute

After executing the MOU and NDA, the parties began negotiating a formal definitive purchase agreement.  (Am. Compl. ¶ 51-53.)  Those negotiations included telephone calls, Zoom conferences, text messages, and emails with Bryant in Los Angeles.  (*Id*. at ¶ 51-56).  Plaintiffs further allege that Cleanview arranged for LGI's representatives to visit and "conduct physical verification of key contacts and aspects of the business in Indonesia."  (*Id*. at ¶ 52).

At the same time, "LGI continued to place kratom orders from" Plaintiffs under the ESA. (*Id*. at ¶ 58.)  Certain shipments received by LGI failed to meet minimum testing specifications, and LGI sent notices of defect to Plaintiffs pursuant to the terms of the ESA.  (*Id*. at ¶ 43.)  While Plaintiffs allege that LGI "did not return the supposedly defective product," Plaintiffs do not allege that they paid, or even offered to pay, the expenses of returning the defective product as required by the ESA.  (*Id*.)

The Amended Complaint then alleges that negotiations concerning the definitive purchase agreement began to fall apart. (Am. Compl. ¶¶ 62-72.) Plaintiffs allege "upon information and belief" that "Ted Palaio and others directly contacted farmers in the Cleanview Companies supply chain – farmers [who] only were identified pursuant to the NDA – and began requesting that [those] farmers undertake various changes to their practices." (*Id*. at ¶ 63.) Plaintiffs further allege "upon information and belief" that "Ted Palaio and the other LGI executives have been actively engaged with local Indonesian individuals and entities that are part of Cleanview's supply chain." (*Id*. at ¶ 64.) The Amended Complaint does not explain how these actions are prohibited by the NDA. Indeed, some of these actions are expressly authorized, and even required, by both the ESA and the MOU. (ESA §§ 1(a)(ix), 1(b)(iii); MOU at pp. 2-3.)

Perhaps realizing as much, Plaintiffs' Amended Complaint now newly alleges "upon information and belief" that Ted Palaio is "actively establishing a competing enterprise using all of the information and contacts he received or derived from materials the Cleanview Companies supplied under the NDA." (Am. Compl. ¶¶ 62, 71.) Plaintiffs further allege "upon information and belief" that "Palaio was inducing Indobotanical to end its contract with the Cleanview Companies and start a direct, multi-million contract with LGI." (*Id*. ¶ 60.)

"[O]n June 10, 2021, [Plaintiffs] demanded that LGI cease and desist any use of information or materials in breach of the terms of the NDA, and that LGI immediately pay the outstanding invoices." (*Id*. ¶ 67.) LGI responded to that letter on June 29, 2021, denying the baseless assertions made in it. (*Id*. at ¶ 68.) LGI also sent Plaintiffs a separate notice regarding Plaintiffs' breaches of the ESA. (*Id*.) In response, Plaintiffs instituted this action.

### D. Procedural Posture

Plaintiffs commenced this action on or about July 16, 2021 by filing a complaint (the "Original Complaint") against LGI, among others, in the Superior Court of the State of California

for the County of Los Angeles.  (ECF No. 1.)  LGI timely removed the action to the United States

District Court for the Central District of California.  (*Id.*)  On October 14, 2021, LGI moved to

dismiss Plaintiffs' Original Complaint, or alternatively, to transfer the action to this Court. (ECF

No. 37.)  While LGI's motion to dismiss/transfer was pending before the Court in the Central

District of California, Plaintiffs filed the Amended Complaint.  (ECF No. 50.)  On November 12,

2021, the United States District Court for the Central District of California, Judge Blumenfeld

presiding, entered an order severing Plaintiffs' claims against LGI and transferring them to this

Court.  (ECF No. 59.)  Judge Blumenfeld did not reach the merits of LGI's motion to dismiss

Plaintiffs' claims.  (*Id.*)

## III.    LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter,

accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Free Speech v. Fed.

Election Comm'n*, No. 12-cv-127, 2013 WL 12142583, at *2 (D. Wyo. Mar. 19, 2013) (quoting

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)), *aff'd*, 720 F.3d 788 (10th Cir. 2013).  "Accordingly,

complaints that 'offer[ ] labels and conclusions[,] a formulaic recitation of the elements of a cause

of action or 'naked assertions devoid of further factual enhancement,' will not survive a motion to

dismiss." *Stone v. Simone*, No. 13-cv-00126, 2014 WL 11357747, at *2 (D. Wyo. July 7, 2014)

(alterations in original) (quoting *Ashcroft*, 556 U.S. at 678), *aff'd*, 610 F. App'x 751 (10th Cir.

2015); *Morrow v. Xanterra Parks & Resorts*, No. 12-cv-141, 2012 WL 13065593, at *2 (D. Wyo.

Oct. 22, 2012) ("If a complaint fails to sufficiently allege facts supporting each element of a claim,

then the court should dismiss the claim under Rule 12(b)(6).").  "In evaluating a Rule 12(b)(6)

motion to dismiss, courts may consider not only the complaint itself, but also attached exhibits,

and documents incorporated into the complaint by reference." *Free Speech*, 2013 WL 12142583,

at *2 (quoting *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009)).

## IV. ARGUMENT

### A. Plaintiffs' First Cause of Action Fails to State a Claim for Fraud-in-the-Inducement

Even accepting the Amended Complaint's allegations as true, Plaintiffs have failed to plead

a cause of action for fraud-in-the inducement with respect to the MOU/NDA. Under Wyoming

law, "[t]he elements that must be alleged to support [a claim for fraud-in-the-inducement] are 1)

the defendant made a false representation intending to induce action by the plaintiff; 2) the plaintiff

reasonably believed the representation to be true; and 3) the plaintiff suffered damages in relying

on the false representation." *Elworthy v. First Tenn. Bank*, 2017 WY 33, ¶ 41, 391 P.3d 1113,

1124 (Wyo. 2017)[4] (quotation marks omitted). "Such a claim must be pled with particularity"

under FRCP 9(b). *Breen v. Pruter*, No. 14-cv-00081, 2015 WL 6163439, at *8 (D. Wyo. Aug. 6,

2015), *aff'd*, 679 F. App'x 713 (10th Cir. 2017); *accord Elworthy*, 2017 WY 33, ¶ 42, 391 P.3d

at 1124–25. The Amended Complaint fails to meet these pleading standards for three reasons.

#### 1. Plaintiffs Fail to Plead Any Alleged Misrepresentations with Sufficient Particularity.

First, Plaintiffs fail to allege with the particularity required by Rule 9(b) that LGI made *any*

actionable misrepresentations intending to induce action by Plaintiffs. *Elworthy*, 2017 WY 33, ¶

41, 391 P.3d 1113, 1124. Under Rule 9(b), Plaintiffs must specifically identify the "time, place,

and contents of the false representations, as well as the identity of the person making the

---

[4] This claim is governed by Wyoming law both because "[a] federal court sitting in diversity applies the substantive law of the forum state," *Mincin v. Vail Holdings, Inc.*, 308 F.3d 1105, 1108 (10th Cir. 2002), and the NDA contains an enforceable choice-of-law clause which provides, in pertinent part, that "the validity, construction and performance of this Agreement shall be governed by and construed in accordance with the laws of the State of WY." (NDA, at § 9.2). In his order transferring this case to this Court, Judge Blumenfeld of the United States District Court for the Central District of California held that "Plaintiffs' claims under the NDA are governed by Wyoming law." (Order Granting Defendant's Motion to Transfer, ECF No. 59, at 5.)

representation and what he obtained thereby." *Rogers v. Wright*, 2016 WY 10, ¶ 21, 366 P.3d 1264, 1273 (Wyo. 2016) (quotation marks omitted); *accord Koch v. Koch Indus., Inc.*, 203 F.3d 1202, 1236 (10th Cir. 2000). But the Amended Complaint merely alleges that LGI, through its representatives, made misrepresentations "in multiple telephone conversations, Zoom conferences, and other communications from January through May 2021." (Am. Compl. ¶ 74.) These vague allegations that multiple unidentified speakers allegedly made unspecified statements on multiple occasions over a five-month period do not suffice. *United States ex rel. Lacy v. New Horizons, Inc.*, 348 F. App'x 421, 424-25 (10th Cir.2009); *Woodard v. Stryker Corp.*, No. 11-cv-36, 2011 WL 13112108, at *3 (D. Wyo. Apr. 13, 2011) (holding that plaintiff's allegations were insufficient to "set forth the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof" (quotation marks omitted)); *White v. Shane Edeburn Constr., LLC*, 2012 WY 118, ¶¶ 26-28, 285 P.3d 949, 957-58 (Wyo. 2012) (stating that facts supporting elements of fraud must be alleged clearly and distinctly); *In re Adoption of Hiatt*, 69 Wyo. 373, 382, 242 P.2d 214, 216 (Wyo. 1952) (fraud complaint must allege tangible facts with certainty and definiteness); *Koch*, 203 F.3d at 1236-37.

The vagueness of Plaintiffs' allegations—particularly regarding when any alleged misrepresentations were made—is also problematic inasmuch as any alleged misrepresentations made *after* the execution of the MOU and NDA on March 10, 2021 (MOU at pp. 3-4; NDA at p. 5) cannot form the basis for a claim of fraud in the inducement. *Garner v. Hickman*, 709 P.2d 407, 410 (Wyo. 1985) ("[I]n order to establish fraud, the alleged false representations must be made before execution of the contract upon which the action is based."); *Schepps v. Howe*, 665 P.2d 504, 509 (Wyo. 1983); *Gamble v. Overton*, No. 05-cv-192, 2007 WL 9707043, at *5 (D. Wyo. Nov. 8, 2007) ("[T]he false representations must be made before the execution of the contract which the

action is based.")..

While the Amended Complaint does identify a few communications as occurring prior to the signing of the MOU, none of these communications are alleged to contain misrepresentations. Rather, Plaintiffs' pre-March 10 allegations merely reference introductory meetings at which LGI identified its representatives and provided information about its business—none of which allege any false representations. (*See* Am. Comp. ¶¶ 40-47.) Accordingly, the Amended Complaint does not "afford [LGI] fair notice of plaintiff's claims and the factual ground upon which they are based." *Koch*, 203 F.3d at 1236 (quotation marks and alteration marks omitted); s*ee also Elworthy*, 2017 WY 33, ¶¶ 44-45, 391 P.3d at 1126 (holding that general allegations "that Ms. Wall represented that she was an independent broker," that "Plaintiffs understood based on affirmative representations made on several occasions that Ms. Wall was an independent broker," and that "Wall continually assured Plaintiffs that she was an independent broker" lacked "the particularity required by Rule 9(b)" (quotation marks omitted)); *Gamble*, 2007 WL 9707043, at *5 (D. Wyo. Nov. 8, 2007).

### 2.     Plaintiffs Allege Broken Promises, Not Actionable Misrepresentations

Even assuming, *arguendo*, that Plaintiffs had pleaded specific misrepresentations with the requisite particularity under Rule 9(b), the allegations pled all boil down to the claim that LGI failed to follow through on its alleged promise to purchase Cleanview's business. (*See, e.g.,* Am. Compl. ¶¶ 69-70, 74-77). But mere broken promises do not constitute actionable fraud. *See, e.g., Cleary v. Wind Quarry, LLC*, No. 15-cv-189, 2016 WL 10518596, at *6 (D. Wyo. Jan. 29, 2016) (noting that "a breach of contract does not automatically demonstrate fraud").

Plaintiffs allege that LGI represented it was "interest[ed] in acquiring the Cleanview Companies to achieve" "traceability [of shipments of kratom] from a farm through the whole supply, manufacturing, and distribution chain." (Am. Compl. ¶¶ 40, 74.) According to Plaintiffs,

these representations were false because they claim that LGI never intended to acquire Cleanview. (*See id.* ¶¶ 70, 75 ("Despite the Cleanview Parties' continuous efforts to finalize the definitive agreement, [LGI has] demonstrated [its] true intention—[it] never intended to complete the transaction or pay Cleanview, but instead intended to use those agreements and the promises to create [its] own competing enterprise using Cleanview's information.").) But the Amended Complaint not only fails to plead any concrete *facts* to support this conclusory claim, but also contains allegations to the contrary. *See Cleary*, 2016 WL 10518596, at *6 (noting that "[a]lthough Plaintiff pleads 'Defendants intended for Plaintiff to rely on their representations, to his own detriment,' 'Defendants did not intend to perform on their promises,' and 'Defendants knew their representations were inaccurate and unfounded,' Plaintiff has not identified any specific facts to support these conclusions"). For example, the Amended Complaint describes in detail LGI's participation in months of detailed negotiations towards finalizing the transaction anticipated in the MOU – hardly the conduct one would expect if LGI never intended to finalize the transaction. (*See, e.g.,* Am. Compl. ¶¶ 51-61). Wyoming law is well-settled that "fraud will not be imputed to a party when the facts and circumstances out of which it is supposed to arise are equally consistent with honesty and purity of intention." *Johnson v. Soulis*, 542 P.2d 867, 874 (Wyo. 1975); *accord Twing v. Schott*, 80 Wyo. 100, 107, 338 P.2d 839, 840 (1959). Plaintiffs' own allegations are, at the very least, "equally consistent" (and indeed substantially more consistent) with LGI's intention to consummate the envisioned transaction and thus fail to plead any actionable misrepresentation. *Johnson*, 542 P.2d at 874.

At bottom, the only concrete fact that Plaintiffs allege to support their claim that LGI misrepresented its intentions is that no definitive purchase agreement was ever consummated. (Am. Compl. ¶¶ 69-70.) But mere allegations "that the representations made by Defendants at the

time of contract negotiations failed to materialize" are insufficient "to satisfy the pleading standard for fraud." *Gamble*, 2007 WL 9707043, at *5; *see also Bitker v. First Nat'l Bank in Evanston*, 2004 WY 114, ¶ 13, 98 P.3d 853, 856 (Wyo. 2004) (holding that "general allegations of fraudulent conduct" are insufficient to meet the required pleading standard); *U.S. Bank, N.A. ex rel. Registered Holders of ML-CFC Com. Mortg. Tr. 2007-7 v. Miller*, No. 12-cv-05632, 2013 WL 12183654, at *8 (C.D. Cal. Sept. 19, 2013) (holding "a general allegation that the defendant never intended to keep [its] promise," is not "sufficient to state a fraudulent inducement claim" as it would allow plaintiffs to "turn every breach of contract claim into one of fraud as well." (quotation marks omitted)). Moreover, Plaintiffs' allegations "upon information and belief" without explaining the factual basis for their belief (*see, e.g.,* Am. Compl. ¶¶ 4, 60, 62-64, 71, 75, 78) are insufficient to state a fraud claim. *Woodard*, 2011 WL 13112108, at *3 ("[U]nless an exception applies, allegations made 'on information and belief' are insufficient.").

### 3.      Plaintiffs Fail to Allege Reasonable Reliance

Ironically, the allegations of the Amended Complaint confirm that Plaintiffs could not have reasonably relied on any alleged misrepresentation of LGI's intentions because the alleged misrepresentations in question are contradicted by the MOU's express terms.[5]  Wyoming law is clear that a party cannot claim to rely on oral representations that are contradicted by a written agreement. *E.g., Rohr v. Allstate Fin. Servs.*, 529 F. App'x 936, 942 (10th Cir. 2013) (holding that a plaintiff cannot reasonably rely on an oral promise in light of contrary written evidence); *Johnson*, 542 P.2d at 873 ("Whatever the situation may have been up to that time so far as the

---

[5] Here, the Court can consider the terms of the MOU in adjudicating this motion to dismiss because it was attached to the Complaint, and is part of the pleadings for purposes of this motion. *Commonwealth Prop. Advocs., LLC v. Mortg. Elec. Registration Sys., Inc.*, 680 F.3d 1194, 1201 (10th Cir. 2011) ("In evaluating a motion to dismiss, we may consider not only the complaint, but also the attached exhibits and documents incorporated into the complaint by reference.").

negotiations of the parties were concerned, Johnson, at the time of the contract, knew that Soulis did not intend to pay more than the contract required, and it then became legally impossible for Johnson to rely upon any promise with respect to payment of $700 a month to him as a fact inducing him to make the contract.").

The MOU makes clear that any definitive agreement to acquire Cleanview was conditioned on multiple contingencies, rendering unreasonable any alleged reliance by Plaintiffs on LGI's alleged representations about its intentions. The MOU plainly states that it is intended "to outline the offering terms for" a potential acquisition, which would be later memorialized in a "formal Purchase and Sale Agreement." (MOU at p. 1). The MOU also makes clear the consummation of such an agreement was subject to multiple contingencies, including LGI's "approval" – which it was under no obligation to give. (*See id.* at 1, 3).

But Plaintiffs do not even attempt to allege that all of these contingencies were satisfied. For example, the MOU conditions any definitive agreement on "[c]onfirmation of the legal action with the US Government that authorizes the import of the Import Product," but Plaintiffs nowhere allege that this occurred. (*Id.* at 3.) And Plaintiffs' allegations (again) undermine any suggestion that the conditions precedent for a definitive agreement were met. The MOU requires the parties to agree on "the quality standard (set by Buyer) and to reach agreeable terms for quality inspection and verification of raw material," (*id.* at 3), but Plaintiffs allege that LGI never even provided quality standards to them, much less that they agreed on any standards with LGI. (*See* Am. Compl. ¶¶ 36, 43.) Plaintiffs cannot have reasonably relied on LGI's alleged representations of its intention to acquire Cleanview, when they specifically agreed in writing that such acquisition was subject to multiple contingencies that never occurred.

**B.     Plaintiffs' Second Cause of Action Fails to State a Claim for Tortious Interference with Contract**

Plaintiffs' tortious interference claim fails for the simple reason that they fail to allege facts showing that any alleged interference with their supply contract(s) was tortious.

**1.     Wyoming Courts Would Recognize the Competitor's Privilege**

Wyoming follows the articulation of the tortious interference cause of action set forth in the Second Restatement of Torts (the "Restatement") which requires Plaintiffs to allege:

> (1) The existence of a valid contractual relationship or business expectancy; (2) knowledge of the relationship or expectancy on the part of the interferer; (3) intentional and improper interference inducing or causing a breach or termination of the relationship or expectancy; and (4) resultant damage to the party whose relationship or expectancy has been disrupted.

*Downs v. Homax Oil Sales, Inc.*, 2018 WY 71, ¶ 21, 421 P.3d 518, 523-24 (Wyo. 2018) (quotation marks omitted) (noting that the "Court adopted the general description of tortious interference with a prospective contractual relation from Restatement (Second) of Torts § 766B (1979, updated 2018).").  As a general rule, Wyoming courts consider the following factors to determine whether intentional interference with a contract is "improper":

> (a) the nature of the actor's conduct, (b) the actor's motive, (c) the interests of the other with which the actor's conduct interferes, (d) the interests sought to be advanced by the actor, (e) the social interests in protecting the freedom of action of the actor and the contractual interests of the other, (f) the proximity or remoteness of the actor's conduct to the interference and (g) the relations between the parties

*First Wyo. Bank, Casper v. Mudge*, 748 P.2d 713, 716–17 (Wyo. 1988) (quotation marks omitted) (quoting *Toltec Watershed Imp. Dist. v. Johnston*, 717 P.2d 808, 813 (Wyo. 1986)); *see also* Restatement (Second) of Torts § 767 (same).[6]  But this multi-factor inquiry gives way in "specific situations" where the case law has recognized "crystallized privileges or rules defining conduct

---

[6] *Toltec* mistakenly cites Section 766, rather than 767 of the Second Restatement for these factors.  717 P.2d at 814.

that is not improper." Restatement (Second) of Torts § 767, cmt. b; *see also First Wyo. Bank*, 748 P.2d at 717 (recognizing privilege for assertion of "a bona fide claim in good faith" per Restatement § 773).

One such rule -- often referred to as the "competitor's privilege" – sets a higher bar for a tortious interference claims against a competitor by requiring the plaintiff to show either that (a) the competitor induced a breach of a contract with a third party, or (b) the competitor used "wrongful means" to interfere with a prospective contractual relationship or induce the termination of a contract terminable at will. Restatement (Second) of Torts § 768.[7] As the Seventh Circuit explained in the context of dispute between sports agents, the reason for this rule is that competition is generally desirable and presumptively lawful:

> There is in general nothing wrong with one sports agent trying to take a client from another if this can be done without precipitating a breach of contract. That is the process known as competition, which though painful, fierce, frequently ruthless, sometimes Darwinian in its pitilessness, is the cornerstone of our highly successful economic system. Competition is not a tort, but on the contrary provides a defense (the "competitor's privilege") to the tort of improper interference.

*Speakers of Sport, Inc. v. ProServ, Inc.*, 178 F.3d 862, 865–66 (7th Cir. 1999) (citations omitted) (citing Restatement (Second) of Torts § 768) (collecting cases). Although Wyoming courts have yet to consider the competitor's privilege, Wyoming's highest court would likely adopt this privilege because it generally follows the standards for tortious interference established by the Restatement (Second) of Torts. *See supra* p. 14; *cf. DP-Tek, Inc. v. AT & T Glob. Info. Sols. Co.*, 100 F.3d 828, 832 (10th Cir. 1996) (upholding district court's determination that "the Kansas

---

[7]*Occusafe, Inc. v. EG&G Rocky Flats, Inc.*, 54 F.3d 618, 622–23 (10th Cir. 1995) (describing the rule stated in Restatement § 768 as the "competitor's privilege"); *Franklin D. Azar & Assocs., P.C. v. Egan*, 787 F. App'x 528, 531 (10th Cir. 2019) ("To prove tortious interference with an at-will contract, a plaintiff must prove that the defendant interfered with the contract with an improper motive or through improper means." (applying New Mexico law)).

Supreme Court would adopt the business competitor privilege set forth in § 768 because Kansas courts have adopted other portions of the Restatement in regards to the torts of tortious interference." (quotation marks omitted)).

### 2. Plaintiffs Fail to Allege Facts Overcoming the Competitor's Privilege

The Amended Complaint makes clear that the competitor's privilege is applicable here, as it repeatedly complains that LGI is using information about Plaintiffs' suppliers to "compete" with them.[8] Crucially, the Amended Complaint specifically ties LGI's alleged interference to its creation of a competing business, speculating that "LGI and . . . [is] intentionally misusing the Cleanview Companies' confidential information and interfering with its preexisting business relationships to cut the Cleanview Companies out of the deal and *start* [its]*own kratom import and distribution business* using the information and contacts that the Cleanview Companies provided pursuant to the NDA." (Am. Compl. at ¶ 71; *compare id.* at ¶¶ 1, 21-23 (alleging that Plaintiffs' business is the import and distribution of kratom).) It is well settled that competitor's privilege applies "when the parties compete in any way," including where "the parties competed as buyers." *Util. Trailer Sales of Kansas City, Inc. v. MAC Trailer Mfg., Inc.*, 443 F. App'x 337, 343 (10th Cir. 2011) (holding that privilege applies to parties that competed as buyers in labor market because the privilege "applies whether the actor and the person harmed are competing as sellers or buyers or in any other way, and regardless of the plane on which they compete" (quoting Restatement §

---

[8] (Am. Compl. ¶ 3 (claiming that defendants used Plaintiffs' confidential information to "*compete*" with Cleanview"); *id.* ¶ 4 (claiming that defendants "used . . . delay tactics to buy themselves more time to establish their *competing venture* using Cleanview's confidential information"); *id.* ¶ 5 (asking court to hold defendants "responsible for the scheme to acquire Cleanview's confidential information and *compete* with Cleanview"); *id.* ¶ 62 (alleging that Palaio was "actively establishing a *competing enterprise* using all of the information and contacts he received or derived from materials the Cleanview Companies supplied under the NDA") (emphases added).)

768, cmt. c; applying Colorado law)); *Occusafe*, 54 F.3d at 623.

Because they acknowledge that LGI is a competitor, Plaintiffs must allege facts sufficient to overcome the competitor's privilege. *See Eller v. Nat'l Football League Players Ass'n*, 731 F.3d 752, 758-60 (8th Cir. 2013) (affirming district court's dismissal of tortious interference claim against competitor because plaintiffs failed to overcome the competitor's privilege and "allege facts proving that defendants improperly or wrongfully interfered with these advantageous prospects"); *Zimmer Spine, Inc. v. EBI, LLC*, No. 10-cv-03112, 2011 WL 4089535, at *7 (D. Colo. Sept. 14, 2011) (dismissing tortious interference claims against competitor for failure to allege facts showing that defendant used "wrongful means").[9]

The Amended Complaint fails do to so. Plaintiffs complain that LGI "[c]onspir[ed] to enter into [its] own agreements with the individuals and entities that are part of Cleanview, Smash Hit, and Green Gold's supply chain" (Am. Compl. ¶ 87(iii); *see also id.* ¶ 71 (alleging, "[u]pon information and belief," that "Ted Palaio and Peyton Palaio entered into new direct contracts with farmers and Indobotanical for the benefit of LGI, Olistica, and other companies within the group, without any notice or consent from the Cleanview Companies.") But Plaintiffs say nothing about the terms of their contracts with Indobotanical or other suppliers, and do not claim that LGI induced a *breach* of those contracts. Although Plaintiffs repeatedly emphasize that their supply contract with Alphabet Wholesale is "exclusive" (Am. Compl. ¶¶ 30-31, 33, 35, 105), they do not allege their contracts with Indobotanical or other suppliers are exclusive, such that these suppliers

---

[9] *See also generally Della Penna v. Toyota Motor Sales, U.S.A.*, 902 P.2d 740, 747 (Cal. 1995) (recognizing that "close to a majority of the high courts of American jurisdictions have ... explicitly approv[ed] a rule that requires the plaintiff in such a suit to plead and prove the alleged interference was either 'wrongful,' 'improper,' 'illegal,' 'independently tortious' or some other variant on these formulations"); Restatement (Second) of Torts § 767, cmt. b (noting that it is often "a part of the plaintiff's case to plead and prove lack of justification").

would breach their alleged contracts with Plaintiffs by supplying kratom to LGI.

Plaintiffs also allege that "Palaio was inducing Indobotanical to end its contract with the Cleanview Companies" (Am. Compl. ¶ 60), but fail to allege that the alleged contract was not terminable at will and thus that Indobotanical breached this alleged contract by ending it. *Cf. Allen v. Safeway Stores Inc.*, 699 P.2d 277, 281 (Wyo. 1985) (noting in context of tortious interference claim that plaintiff "did not allege the existence of contracts with definite terms of employment. Thus, the employment relationships were terminable at will by either party."). If, like the ESA, Cleanview's contract with Indobotanical was terminable at will, inducing such a termination would be tortious only if defendants used "wrongful means." Restatement § 768(2).

But Plaintiffs also fail to allege LGI used any "wrongful means" to compete with them. "Wrongful means are described as . . . 'physical violence, fraud, civil suits and criminal prosecutions'" – *i.e.*, "independently actionable conduct." *DP-Tek, Inc.*, 100 F.3d 828, 833 (quoting Restatement (Second) of Torts § 768, cmt. e) (applying Kansas law); *see also Util. Trailer Sales of Kansas City*, 443 F. App'x at 343 (same). Plaintiffs' allegations fall well short of this exacting standard. The only "independently actionable" tort that Plaintiffs attempt to allege is fraud. (*See* Am. Compl. ¶¶ 74-82.) But, as explained above, Plaintiffs' vague allegations utterly fail to state a claim for fraud and must be dismissed.

Also insufficient is Plaintiffs' repeated claim that LGI breached the NDA and used confidential information to contract with Plaintiffs' suppliers. (*See, e.g.,* Am. Compl. ¶¶ 1-5, 71.) This (at most) alleges a mere breach of contract, not an "independently actionable" tort that amounts to physical violence, fraud, civil suits or criminal prosecutions. *See Int'l Sales & Serv., Inc. v. Austral Insulated Prods., Inc.*, 262 F.3d 1152, 1160 (11th Cir. 2001) (holding plaintiff failed to overcome competitor's privilege where "[defendant] promised [plaintiff] that it would not sell

directly to [plaintiff's] customers if [plaintiff] told [defendant] the identity of its customers. However, [defendant] subsequently broke that promise and sold directly to [a customer]"); *Royal Typewriter Co. v. Xerographic Supplies Corp.*, 719 F.2d 1092, 1105 (11th Cir. 1983). This conclusion is confirmed by the well settled economic loss rule, which bars Plaintiffs from recovering in tort for a claimed contractual breach. *See Sinclair Wyo. Refin. Co. v. A & B Builders, Ltd.*, 989 F.3d 747, 770 (10th Cir. 2021) ("[T]he 'economic loss rule' bars recovery in tort when a plaintiff claims purely economic damages unaccompanied by physical injury to persons or property." (quotation marks omitted) (applying Wyoming law)). As with their fraud claim, Plaintiffs improperly seek to convert what is (at most) an alleged breach of contract into a tort.

**C.  Plaintiffs' Fourth and Sixth Causes of Action Fail to State a Claim for Breach of the Covenant of Good Faith and Fair Dealing.**

The Amended Complaint's fourth and sixth causes of action attempt to plead breaches of the covenant of good faith and fair dealing implied in the MOU/NDA, and the ESA, respectively. These claims fail because they merely duplicate Plaintiffs' breach of contract claims, rather than resting on any concrete, independent allegations of bad faith conduct. A breach of the covenant of good faith and fair dealing implied in a contract occurs when a party interferes or fails to cooperate in the other party's performance of its duties under the contract. *Bear Peak Res., LLC v. Peak Powder River Res., LLC*, 2017 WY 124, ¶ 68, 403 P.3d 1033, 1054 (Wyo. 2017) (quoting *Scherer Constr., LLC v. Hedquist Constr., Inc.*, 2001 WY 23, ¶ 19, 18 P.3d 645, 652-53 (Wyo. 2001)). "The covenant of good faith and fair dealing may not, however, be construed to establish new, independent rights or duties not agreed upon by the parties. In other words, the concept of good faith and fair dealing is not a limitless one." *Id*. (quoting *Scherer Constr., LLC*, 2001 WY 23, ¶ 19, 18 P.3d at 652-53) Further, "[u]nder Wyoming law, a claim for breach of the implied covenant of good faith and fair dealing cannot exist where a party is simply exercising those rights

that they are contractually entitled to exercise." *Harper v. Fidelity & Guar. Life Ins. Co.*, 2010 WY 89, ¶ 34, 234 P.3d 1211, 1221 (Wyo. 2010).

### 1.   Plaintiffs Offer Only Conclusory Allegations that LGI Breached the Covenant of Good Faith and Fair Dealing Implied in the MOU and NDA

In support of their claim that LGI breached the covenant of good faith and fair dealing implied in the NDA and MOU, Plaintiffs merely assert that defendants "fail[ed] to act fairly, honestly, and cooperatively with Cleanview and [sought] to deprive Cleanview of the benefits of the MOU and NDA." (Am. Compl. ¶ 100). Plaintiffs fail to plead any concrete facts showing that LGI interfered with or failed to cooperate in Plaintiffs' performance of their obligations under the MOU or the NDA. *See Bear Peak Res., LLC*, 2017 WY 124, ¶ 68, 403 P.3d at 1054; *Stone*, 2014 WL 11357747, at *2. Vague, conclusory allegations of unspecified wrongdoing are insufficient to state a claim. *See Anapoell v. Am. Express Bus. Fin. Corp.*, No. 08-cv-4114, 2009 WL 766532, at *3-4 (10th Cir. Mar. 24, 2009) (affirming dismissal of good faith and fair dealing claim where plaintiff offered only conclusory allegation that defendant charged "grossly excessive fees").

### 2.   Plaintiffs' Good Faith Fair Dealing Claim Is Inconsistent with the ESA

With respect to the ESA, Plaintiffs' good faith and fair dealing claim improperly attempts to rewrite the parties' contract. Specifically, Plaintiffs allege that LGI breached the implied covenant by (1) "delivering improper notices of defect, when . . . the parties never agreed upon any testing or specifications"; (2) "using improper testing"; and (3) "failing to permit Smash Hit and Green Gold's own inspection of the purportedly defective product." (Am. Compl. ¶ 112). Although more specific, these allegations fail as a matter of law.

As to the first two allegations, the ESA[10] itself expressly authorizes LGI to test incoming

---

[10] Like the MOU/NDA, Plaintiffs attach the ESA as an exhibit to the Amended Complaint.

shipments, and to notify Green Gold and Smash Hit of rejected shipments that do not pass "incoming material testing and specifications." (ESA §§ 1(a)(vi), 1(b)(ii).) "Under Wyoming law, a claim for breach of the implied covenant of good faith and fair dealing cannot exist where a party is simply exercising those right[s] that they are contractually entitled to exercise." *Bear Peak Res., LLC*, 2017 WY 124, ¶ 69, 403 P.3d at 1054 (quotation marks omitted); *accord Scherer Constr., LLC v. Hedquist Constr., Inc.*, 2001 WY 23, ¶ 19, 18 P.3d 645, 653–54 (Wyo. 2001) ("In the absence of evidence of self-dealing or breach of community standards of decency, fairness or reasonableness, the exercise of contractual rights alone will not be considered a breach of the covenant." (quotation marks omitted)); *Wilder v. Cody Country Chamber of Com.*, 868 P.2d 211, 220-21 (Wyo. 1994). LGI's exercise of its express contractual rights cannot form the basis for a claim for breach of the implied covenant of good faith and fair dealing absent allegations that LGI engaged in self-dealing or violated community standards of decency, fairness, or reasonableness. But the Amended Complaint alleges no such facts. To the contrary, Plaintiffs promised in the MOU that LGI "will be provided, at no cost, with approximately 320 tons of material to replace that which was delivered under the existing supply contract and did not meet [LGI's] specifications." (MOU, at 2.) While Plaintiffs *now* claim that LGI's notices of defect are mistaken, Plaintiffs cannot plausibly allege that these notices were unfair or unreasonable because they expressly agreed that materials "delivered under the existing supply contract . . . did not meet [LGI's] specifications" and would be replaced.

Plaintiffs' third allegation, that LGI failed to "permit Smash Hit and Green Gold's own inspection of the purportedly defective product," in actuality alleges that LGI breached its

---

Accordingly, this Court can consider it on a motion to dismiss pursuant to FRCP 12(b)(6). *Commonwealth Prop. Advocs., LLC*, 680 F.3d at 1201.

obligation to return rejected material to Smash Hit and Green Gold. (ESA § 1(a)(vi)). But the ESA expressly obligates Smash Hit and Green Gold to bear the expense of returning rejected material, and to replace the material within 24 hours of receipt of the notice of defect, regardless of whether the product has yet been returned. (ESA § 1(a)(vi)). Smash Hit and Green Gold have not alleged that they paid, or even offered to pay, for the expenses of returning the defective material, nor that they timely replaced the defective material. It defies logic for Smash Hit and Green Gold to complain that LGI allegedly "fail[ed] to permit" them to inspect defective product when they themselves have not adhered to their own prior contractual obligation to pay for the return of the product and replace it. (*Id.*)

Indeed, "[a] fundamental limitation of the implied covenant is that it can not [sic] create duties that supersede express provisions of written contracts." *Wilder*, 868 P.2d at 221. By alleging that LGI had a duty to "permit Smash Hit and Green Gold's own inspection of the purportedly defective product" without Plaintiffs first bearing the expense of returning the rejected material as required by the ESA, Plaintiffs impermissibly seek to impose upon LGI "new, independent rights or duties not agreed upon by the parties." *Bear Peak Res.*, 2017 WY 124, ¶ 68, 403 P.3d at 1054 (quotation marks omitted). The Court should reject Plaintiffs' attempt to rewrite contract terms they now find unfavorable under guise of a good faith and fair dealing claim.

### D.    Plaintiffs' Seventh Cause of Action Fails to State a Claim for Unjust Enrichment

The Amended Complaint's seventh cause of action is barred by Plaintiffs' allegation of express contracts with LGI. "Under Wyoming law, quasi contractual claims, including unjust enrichment, are not viable when an express contract exists between the parties." *Safeway Stores 46, Inc. v. Wy Plaza, L.C.*, No. 19-cv-143, 2020 WL 6688606, at *14 (D. Wyo. Oct. 20, 2020) (citing *Hunter v. Reece*, 2011 WY 97, ¶ 28, 253 P.3d 497, 504 (Wyo. 2011); *Sowerwine v. Keith*, 997 P.2d

1018, 1021 (Wyo. 2000); *Schlinger v. McGee*, 2012 WY 7, ¶ 13, 208 P.3d 1317, 1322 (Wyo. 2009)).

Plaintiffs allege that LGI was unjustly enriched by:

(i) utilizing Cleanview's confidential information obtained under the NDA to start a competing business; (ii) receiving discounted rates as set forth in the MOU based only upon the contemplated short, contractual period to finalize a deal; (iii) receiving shipments of kratom from Cleanview and failing to pay the invoices; and (iv) payment of the travel, lodging, and other costs for Ted Palaio's stay in Indonesia.

(Am. Compl. ¶ 116.) The subject matter of each of these allegations is expressly covered by either the MOU, NDA, or ESA. Specifically, allegation (i) is covered by the NDA, allegations (ii) and (iv) fall within the bounds of the MOU, and allegation (iii) is encompassed by the ESA. Thus, because Plaintiffs' unjust enrichment claim expressly relates to LGI's performance (or failure to perform) under the ESA, NDA, and/or MOU, it must be dismissed. *Safeway Stores 46, Inc.*, 2020 WL 6688606, at *15 ("Unjust enrichment is an equitable remedy not available to contract disputes."). As there is an express and enforceable contract governing the relationship between these parties, the claim for unjust enrichment cannot lie.

### E. Plaintiffs' Declaratory Judgment Claims Should Be Dismissed

The Amended Complaint's eighth and ninth causes of action seek declarations that Plaintiffs did not breach the MOU and ESA. These claims should be dismissed because they are duplicative of the breach of contract claims pleaded in the Amended Complaint's third and fifth causes of action. In order to succeed on their breach of contract claims, Plaintiffs must demonstrate that they performed under the contract or were excused from doing so (*i.e.*, that they themselves are not in breach of the contracts). *Halling v. Yovanovich*, 2017 WY 28, ¶ 13, 391 P.3d 611, 616–17 (Wyo. 2017) (holding that an essential element of a breach of contract claim is that the defendant's failure to perform was *un-justified*); *Maverick Benefit Advisors, LLC v. Bostrom,* 2016 WY 96, ¶ 14, 382 P.3d 753, 758 (Wyo. 2016) ("The rule provides that a party cannot claim the

benefit of a contract that it was the first to materially breach.").

Determining these identical issues in the context of a declaratory judgment claim would therefore be unnecessary and duplicative. *U.S. Aviation Underwriters, Inc. v. Dassault Aviation*, 505 F. Supp. 2d 1252, 1271 (D. Wyo. 2007) (dismissing declaratory judgment claim as "not appropriate" where it sought "to address [Plaintiffs'] breach of contract/warranty claims in a declaratory judgment context"); *Franklin Life Ins. Co. v. Johnson*, 157 F.2d 653, 657 (10th Cir. 1946). Indeed, the purpose of the Declaratory Judgment Act, 28 U.S.C. § 2201, is to "enable[] parties uncertain of their legal rights to seek a declaration of right *prior to injury*." *U.S. Aviation Underwriters, Inc.*, 505 F. Supp. 2d at 1271 (emphasis added) (quotation marks omitted). There is no need to seek a declaration of rights after "damages have already accrued." *Id*. Such would be directly contrary to the purpose of declaratory relief.

**F.      Plaintiffs' Punitive Damages Claim Must Be Dismissed**

Plaintiffs' prayer for punitive damages (*see* Am. Compl. at 29) must be dismissed because they have failed to allege the outrageous or malicious conduct necessary for an award of punitive damages. The Amended Complaint only seeks punitive damages in connection with Plaintiffs' tort claims for fraud in the inducement and tortious interference with contract. (*See* Am. Compl. ¶¶ 82, 90.) Because, as explained above (*supra* §§ V.A-B), these tort claims must dismissed, Plaintiffs' claim for punitive damages should be dismissed as well.

Plaintiffs do not seek punitive damages as a remedy for their remaining contractual claims. (*See* Am. Compl. ¶¶ 91-126.) Nor could they: "An unjustified breach of contract does not entitle the opposing party to punitive damages." *Gamble v. Overton*, No. 05-cv-192, 2007 WL 9707047, at *1 n.1 (D. Wyo. Dec. 13, 2007) (citing *United States ex rel. Farmers Home Admin. v. Redland*, 695 P.2d 1031, 1039 (Wyo. 1985)) (noting that court dismissed punitive damages claim on this ground). Wyoming's Supreme Court has observed:

> [I]n order to properly award punitive damages in an action upon breach of contract there would have to be conduct on the part of defendant amounting to aggravation, outrage, malice or willful and wanton misconduct. We also stated that there must be evidence of spite, ill will or willful and wanton misconduct at the inception of a fraudulent contract and that the remedy for wrongful acts occurring afterwards would be compensatory damages for breach of contract. Several jurisdictions have stated the rule that punitive damages can be awarded in a breach of contract action if the conduct constituting the breach rises to the level of an independent tort.

*U.S. ex rel. Farmers Home Admin.*, 695 P.2d at 1039 (quotation marks omitted). Plaintiffs do not even attempt to plead facts satisfying this standard. And their conclusory allegation in connection with their tort claims that LGI's conduct "was willful, malicious and oppressive" (Am. Compl. ¶¶ 82, 90) is precisely the kind of "[t]hreadbare recital[] of the elements of a cause of action" that does not suffice to state a claim under *Twombly* and *Iqbal*. *Mckinney v. Granite Peak Fabrication, LLC*, No. 19-cv-00266, 2020 WL 10356870, at *5 (D. Wyo. Mar. 13, 2020) (rejecting claim that "purely recites the elements of the cause of action, providing no additional supporting facts"). Accordingly, Plaintiffs failed to properly plead punitive damages under Wyoming law.

## V. CONCLUSION

For the reasons set forth above, LGI respectfully requests that the Court grant its Motion and dismiss Counts I, II, IV, VI, VII, VIII, and IX and the prayer for punitive damages asserted in the Amended Complaint with prejudice.

DATED: December 9, 2021                    Respectfully submitted,


By:___*/s/ Marianne K. Shanor*_____
Marianne K. Shanor (Wyo. Bar #7-4841)
Sean M. Larson (Wyo. Bar #7-5112)
Hathaway & Kunz, LLP
2515 Warren Avenue, Suite 500
Cheyenne, WY 82003
Phone: (307) 634-7723
mshanor@hkwyolaw.com
slarson@hkwyolaw.com

Jeffrey P. Mueller (*pro hac vice* forthcoming)
Adam K. Grant (*pro hac vice* forthcoming)
Gregory R. Bruno (*pro hac vice* forthcoming)
Day Pitney LLP
605 Third Avenue, 31st Floor
New York, New York 10158
Phone: (212) 297-5800
jmueller@daypitney.com
agrant@daypitney.com
gbruno@daypitney.com

*Counsel for Defendant LGI Holdings LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on December 9, 2021, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing. Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to the following ECF registrants:

Amanda K. Roberts      [ ✓ ] CM/ECF
J. Kyle Hendrickson      [   ] U.S. Mail
Lonabaugh & Riggs, LLP      [   ] E-mail:
P.O. Drawer 5059      amanda@lonabaugh.com
Sheridan, WY 82801      kyle@lonabaugh.com
*Attorneys for Plaintiffs*

I further certify that on December 9, 2021, I served the attached document by email on the following, who are not registered participants of the ECF System:

Stephen L. Ram      [   ] CM/ECF
Lisa M. Northrup      [   ] U.S. Mail
Nicole L. Carbonel      [ ✓ ] E-mail:
Stradling Yocca Carlson & Rauth      sram@stradlinelaw.com
660 Newport Center Drive, Suite 1600      lnorthrup@stradlinelaw.com
Newport Beach, CA 92660-6422      ncarbonel@stradlinglaw.com
*Attorneys for Plaintiffs (PHV Pending)*

Kirk D. Dillman      [   ] CM/ECF
Mason Storm Byrd      [   ] U.S. Mail
McKool Smith Hennigan PC      [ ✓ ] E-mail:
300 South Grand Avenue, Suite 2900      KDillman@McKoolSmithHennigan.com
Los Angeles, CA 90071      sbyrd@mckoolsmithhennigan.com


           */s/ Marianne K. Shanor*

110362563.8